Argued July 10, affirmed December 6, 1967

## STATE EX REL NILSEN, *Appellant, v.* BERRY ET AL, *Respondents.*

434 P. 2d 471

*G. Dwyer Wilson,* Assistant Attorney General, Portland, argued the cause for appellant. With him on the briefs were Robert Y. Thornton, Attorney General, Salem, and H. J. Belton Hamilton, Thomas N. Trotta, Dale W. Conn, Albert L. Menashe, and Victor Levy, Assistant Attorneys General, Portland.

*Rolfe Cuthbert,* Eugene, argued the cause for respondents. With him on the brief were Husband and Johnson, Eugene.

Before Perry, Chief Justice, and McAllister, Sloan, O'Connell, Goodwin, Holman and Lusk, Justices.

LUSK, J.

The question in this case is whether federal law applies to a provision in a collective bargaining agreement between a labor union and an employer engaged

in interstate commerce prescribing certain procedures to be followed in the prosecution of claims of employees against their employer for overtime wages.

The State, through its Commissioner of the Bureau of Labor, brought two actions upon claims for overtime pay which were assigned to the Commissioner by employees of the defendants pursuant to ORS 652.330 (2). Since the cases were consolidated we will speak of them as though there were but one case. The complaint alleges that the wages claimed were earned pursuant to a collective bargaining agreement between the defendants and Joint Council of Teamsters #37 of Oregon. The amended answer, in addition to denying that plaintiff's assignors had earned any overtime pay, alleges:

> "As a part of such collective bargaining agreement, Defendants and Joint Council 37 agreed among other things that claims for back wages or overtime were required to be presented to the employer and the union in writing within 21 days of the day employee is paid for the period in which back wages or overtime is claimed; otherwise, the Union, the Employer and the employee agree that payment is made in full; and that any differences that may come up between employer and employee which effected [sic] their mutual relations shall be referred to the business agent or the union and that any matter which could not be agreed upon by the union and employer would be arbitrated in accordance with the terms of the contract."

> "No claim for back wages or overtime was presented in writing to Defendants within 21 days of the day plaintiff's assignor was paid for the periods back wages and overtime is claimed due, nor was the matter referred to the business agent or union, nor was the arbitration provision of the collective bargaining agreement invoked by Plaintiff's assignor or the union."

To the affirmative answer the plaintiff filed a demurrer which the court overruled and, the plaintiff refusing to plead further, judgment was entered in favor of the defendants. Plaintiff appeals.

Section 301 (a) of the Labor Management Relations Act of 1947, 29 USCA § 185 (a), reads:

> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

In *Springer v. Powder Power Tool Corp.*, 220 Or 102, 348 P2d 1112, we held, in an action to recover wages claimed to be due because of a retroactive pay increase granted by a collective bargaining agreement between the defendant and the union representing its employees, that section 301 (a) did not deprive state courts of jurisdiction in such a case, but that the state and federal jurisdiction is concurrent. At the time of that decision, the Supreme Court of the United States had not passed upon the question, but since then it has affirmed the view we expressed in the *Springer* case: *Dowd Box Co. v. Courtney,* 368 US 502, 505-506, 82 S Ct 519, 7 L ed 2d 483; *Teamsters Local v. Lucas Flour Co.,* 369 US 95, 101, 82 S Ct 571, 7 L ed 2d 593.

In the *Springer* case it was "not necessary to choose between state and federal law." 220 Or at 107. The principal question seems to have been whether an employee could sue upon a collective bargaining agreement. We held that he could. We took occasion, however, to call attention to the holding of the Supreme Court of the United States in *Textile Workers v.*

*Lincoln Mills,* 353 US 448, 77 S Ct 912, 1 L ed 2d 972, that in suits brought under section 301 (a) the substantive law to be applied is federal law. The court further said in that case that section 301 (a) "authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements and includes within that federal law specific performance of promises to arbitrate grievances under collective bargaining agreements" (353 US at 451) and that "the legislation does more than confer jurisdiction in the federal courts over labor organizations. It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way." Id. at 455. "But state law," the court said, "if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy. * * * Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights. * * *" Id. at 457.

Accordingly, the Supreme Court held proper a decree of the District Court decreeing specific performance sought by a labor union against an employer of an agreement to arbitrate a grievance dispute.

The principles enunciated in *Lincoln Mills* have been applied by the Supreme Court in the following cases: *Dowd Box Company v. Courtney; Teamsters Local v. Lucas Flour Co.,* supra; *Republic Steel Company v. Maddox,* 379 US 650, 85 S Ct 614, 13 L ed 2d 580; *Vaca v. Sipes,* 386 US 171, 87 S Ct 903, 17 L ed 2d 842.

In *Vaca,* the most recent case, the court held that an employee claiming to have been wrongfully discharged could bring an action against his union for arbitrary

refusal of the union to take his grievance to arbitration pursuant to the requirement of a collective bargaining agreement. In the course of the opinion the court said:

"However, if the wrongfully discharged employee himself resorts to the courts before the grievance procedures have been fully exhausted, the employer may well defend on the ground that the exclusive remedies provided by such a contract have not been exhausted. Since the employee's claim is based upon breach of the collective bargaining agreement, he is bound by terms of that agreement which govern the manner in which contractual rights may be enforced. For this reason, it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement. Republic Steel Corp. v. Maddox, 379 US 650, 13 L ed 2d 580, 85 S Ct 614. * * *" 17 L ed 2d at 854.

*Maddox* is indistinguishable from the present case. Maddox sued his employer in an Alabama court to recover money claimed to be owing him as severance pay under a collective bargaining agreement which provided for such pay if an employee was laid off as the result of the permanent closing of the mine where Maddox worked. The collective bargaining agreement also contained a three-step grievance procedure to be followed by binding arbitration, but Maddox made no effort to utilize this mode of redress. Reversing a judgment for the plaintiff, the Supreme Court held that the employee must attempt use of the grievance procedure before his action could be maintained. The court emphasized that the subject matter of section 301 (a) "is peculiarly one that calls for uniform law," citing *Teamsters Local v. Lucas Flour Co.,* 369 US at 103, and said that, even though Maddox had been finally discharged, resolution of his claim through the

grievance procedure would have an effect on future relations between the employer and other employees. In the case at bar it does not appear whether the assignors are still in the employ of the defendants. If they are, the reasoning in *Maddox* applies with even greater force to this case.

Plaintiff ignores for the most part section 301 (a) and the decisions of the Supreme Court of the United States applying it; argues, upon the basis of decisions of this court, that "the law of Oregon is in harmony and is compatible with the federal policy of enforcing arbitration and arbitration agreements," but concludes, nevertheless, that the provisions of the collective bargaining agreement here in question are contrary to the public policy of this state as expressed in our statutes enacted for the purpose of securing to employees the prompt payment of their wages, among others, the statutes which authorize the Commissioner of the Bureau of Labor to take assignments of wage claims and sue on them and recover judgments for attorneys' fees and penalties: ORS 652.330, 652.150, 652.350.

The argument is self-defeating, for if the statutes referred to are in conflict with section 301 (a) as construed by the Supreme Court of the United States the congressional act must be given effect as the supreme law of the land: Constitution of the United States, Art. VI.①

■ The Labor Management Relations Act is an exercise by Congress of its power to regulate interstate commerce, Constitution of the United States, Art. I, § 8. By section 301 Congress has, with respect to the

---

① "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; * * * shall be the supreme Law of the Land * * *."

subject which it covers, pre-empted the field, state legislation to the contrary notwithstanding. As the court said in *Lucas Flour Co.*: "[W]e cannot but conclude that in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." 369 US at 104. Employees in an industry not "affecting commerce" are, of course, not within the purview of the section.

■ Two other contentions of the plaintiff will be briefly noticed. It is said that this case is controlled by the Fair Labor Standards Act, 29 USCA § 201 et seq., and that under certain provisions of that act the arbitration agreement is void. It may be doubted that the complaint alleged facts which show that the employees were covered by the FLSA. *Kaferle v. Fredrick,* 360 F2d 536 (3d Cir). See, also, *Goldberg v. Wade Lahar Construction Company,* 290 F2d 408 (8th Cir). But that aside, no provision of the act has been called to our attention which can fairly be said to conflict with section 301 (a). The Court of Appeals for the Ninth Circuit, which had to deal with a similar contention, said that it had found no provision of the act "which precludes arbitration of claims arising under it": *Beckley v. Teyssier,* 332 F2d 495, 496-497 (9th Cir). Nor have we.

■ Finally, it is argued that a decision requiring the assignors to resort to the grievance procedures before bringing suit would deprive them of the equal protection of the laws because collective bargaining agreements may vary in content and employees under one such agreement might obtain advantages denied under another. This contention is without merit.

■ The demurrer to the amended answer admits that under the collective bargaining agreement claims for overtime are "required" to be presented to the em-

ployer and the union in writing within 21 days of the day the employee is paid for the period for which overtime is claimed, and that any differences between employer and employee which affect their mutual relations shall be referred to the business agent or the union and that any matter which could not be agreed upon by the union and employer should be arbitrated in accordance with the terms of the contract. The demurrer further admits that none of these things were done by the plaintiff's assignors. Obviously, a disputed claim for overtime pay would affect the mutual relations between employer and employee. The affirmative answer states a defense and the court properly overruled the demurrer.

The judgment is affirmed.