Argued April 4, affirmed June 6, 1978

SWANSON, *Appellant,*

*v.*

VAN DUYN CHOCOLATE SHOPS, INC.,

*Respondent.*

(TC A 7609-12333, SC 25413)

579 P2d 239

Raymond J. Conboy, Portland, argued the cause for appellant. With him on the briefs were Dan O'Leary; Pozzi, Wilson, Atchison, Kahn & O'Leary.

[ 491 ]

Nelson D. Atkin II, Portland, argued the cause for respondent. With him on the brief were William F. Lubersky; Dezendorf, Spears, Lubersky & Campbell.

LINDE, J.

**LINDE, J.**

Plaintiff sued defendant, his former employer, for lost wages plus costs and attorney fees resulting from his discharge without good cause. His complaint alleged that he had been employed by defendant for 19 years, that the employment was covered by a collective bargaining agreement incorporated by reference in the complaint, that plaintiff continued in his employment in reliance on his belief that defendant would not discharge him arbitrarily and without good cause, that the past conduct of the parties gave rise to an implied covenant of the contract prohibiting such discharges, and that defendant breached this covenant by discharging plaintiff without good cause. The circuit court sustained defendant's demurrer to plaintiff's third amended complaint, and plaintiff appeals. We affirm.

In the absence of statute, an employee has no claim to be discharged only for good cause unless such an obligation of the employer is explicit or implicit in an individual or collective agreement. *See Yartzoff v. Democrat-Herald Publishing Co.,* 281 Or 651, 576 P2d 356 (1978). No explicit clause to this effect is claimed in this case. Plaintiff contends that the employer's obligation to discharge employees only for good cause arises from the collective agreement in this case either by virtue of its other terms or implicitly as part of the unwritten law of the plant.

Five clauses of the contract are cited by plaintiff as giving rise to an implication of continued employment terminable only for cause. (1) A union security clause requires union membership as a condition of employment. This clause is to secure the collective interest of the employees in the bargaining relationship itself; it cannot be read to imply that an employee who meets the condition of union membership will in fact be retained. (2) In an antidiscrimination clause of the contract, the employer agrees not to discriminate

against any employee or job applicant on several grounds including "age." However, plaintiff does not allege discrimination. (3) More closely in point is a provision that seniority will apply in "lay-offs due to lack of work" and in restoring laid-off workers to employment. But we are not persuaded that this is open to the implication that the employer has accepted a more general commitment not to discharge senior employees without good cause, and plaintiff does not allege that he was laid off due to lack of work. (4) A vacation clause provides annual vacation benefits increasing with an employee's length of service up to 15 and more years. This implies no more than an assumption that there will be a number of long-term employees. (5) Similarly, a provision in the contract for pension and retirement benefits implies an expectation that there will be "eligible employees" who will become entitled to benefit from the trust funds created under that provision. However, the clause states that it "encompasses the sole and total agreement the Employer and the Union with respect to pensions or retirement," and it is silent on the issue of discharge.[1]

Plaintiff argues that taken together, these clauses recognize valuable rights in continued employment from which an employee could reasonably infer, and a tribunal could imply, a commitment that he would not be discharged without good cause. We think that, aside from plaintiff's subjective assumptions, the clauses at most add up to an inference that the beneficial expectations thus created will not be destroyed for an affirmatively improper reason, for instance in order to reduce the employer's exposure to vacation pay or the benefits payable by the pension fund.[2] The complaint makes no such affirmative allegations. But we do not think that the presence of these other clauses suffices

---

[1] The terms of the Agreement and Declaration of Trust, referred to in the contract provision, were not incorporated with the complaint.

[2] *Cf. Nees v. Hocks,* 272 Or 210, 218, 536 P2d 512 (1975).

to imply into the contract a different provision committing the employer to terminate anyone's employment only for good cause, a provision which is conspicuous by its absence precisely because, according to the complaint, it is common in the collective bargaining agreements negotiated with other employers in the same industry. Why it was omitted in this contract cannot be surmised from the pleadings, but we cannot fill this omission of a major and valuable term, which is usually bargained for by the parties, simply by implication.

Plaintiff places his chief reliance on the approach to labor agreements stated by the United States Supreme Court in *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 US 574 (1960). That case and its companions in the "Steelworker Trilogy" concerned the scope of arbitration under collective bargaining agreements, including the arbitrability of particular disputes. The Court held in *Warrior & Gulf* that the question whether a claim was arbitrable under an agreement should itself have been submitted to an arbitrator. This was found to follow from the agreement to subject what would otherwise be unilateral management decisions to the terms of a contract and to binding arbitration in exchange for the union's sacrificing its corresponding power of unilateral action by a binding no-strike clause. A collective bargaining agreement that substitutes arbitration for unilateral actions, according to *Warrior & Gulf,* implies more than the interpretation of specific contract terms, "it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. . . . [It] covers the whole employment relationship. It calls into being a new common law—the common law of a particular industry or of a particular plant." *Id.* at 578-579. As a consequence, an arbitrator under such an agreement might find that the parties had undertaken obligations which were not expressed in the contract, and courts should enforce arbitration clauses unless it is beyond doubt that the clause does not cover the asserted dispute. *Id.* at 582-583.

[ 495 ]

It is apparent from the context, however, that not only the holding in *Warrior & Gulf* but also its doctrine rests on the mutual exchange of binding arbitration and a binding no-strike clause. The key premise is that labor arbitration, unlike litigation or ad hoc commercial arbitration, is designed to maintain the ongoing symbiosis of labor and management from which neither can escape, that it is "a part of the continuous collective bargaining process." *Id.* at 581. But the contract before us does not contain an arbitration clause or a no-strike clause. The crux of plaintiff's argument is that the "industrial common law" by which an arbitrator might fill in the gaps of a collective bargaining agreement should, in the absence of an arbitration clause, be equally applied by courts or by juries. *Warrior & Gulf* rests on the contrary premise:

> The labor arbitrator performs functions which are not normal to the courts; the considerations which help him fashion judgments may indeed be foreign to the competence of courts. . . . The labor aribtrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. The parties expect that his judgment of a particular grievance will reflect not only what the contract says but, insofar as the collective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequence to the morale of the shop, his judgment whether tensions will be heightened or diminished. For the parties' objective in using the arbitration process is primarily to further their common goal of uninterrupted production under the agreement, to make the agreement serve their specialized needs. The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed. *Id.* at 581-582.[3]

---

[3]However, defendant draws our attention to this qualification stated elsewhere in the trilogy:

We agree with this premise of *Warrior & Gulf.*
Courts and juries are not chosen for their knowledge of
industrial relations nor for their responsibility to
serve the long-run common goals of the parties to the
relationship. They are bound to apply law. This does
not mean that an action on an individual or collective
labor contract cannot invoke rights said to be implicit
in the terms of the contract or to have arisen by
accepted practice and mutual understanding or other
collateral agreement. It does mean that in actions on
labor contracts not involving arbitration, such collat-
eral terms must be pleaded and proved as in other
contracts.

As stated above, the actual terms of the present
contract are not susceptible to an interpretation that
defendant had promised to discharge employees only
for good cause. Moreover, a commitment to the labor
relations concept of "good cause" is particularly likely
to be coupled with a prescribed grievance procedure
culminating in arbitration, which this contract lacks.
As for a collateral agreement by mutually accepted
practice and understanding between the parties (or
between the employer and plaintiff's union), the com-
plaint alleges only plaintiff's belief that he would not
be discharged without good cause and his continued
work for defendant in reliance on this belief, followed
by the assertion that "[s]aid conduct on the part of the
plaintiff and defendant gave rise to an implied cove-
nant of the [labor agreement] . . . which prohibited
discharge without good cause." However, the com-
plaint alleges no conduct on the part of defendant
other than the employment of plaintiff under the labor

---

Nevertheless, an arbitrator is confined to interpretation and applica-
tion of the collective bargaining agreement; he does not sit to dispense
his own brand of industrial justice. He may of course look for guidance
from many sources, yet his award is legitimate only so long as it draws
its essence from the collective bargaining agreement.

*United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 US
593, 597 (1960).

agreement and his discharge after 19 years of service. Lacking any other allegations of conduct by defendant giving rise to an "implied covenant," the quoted assertion is purely conclusory and does not present an issue for trial. The demurrer was correctly sustained.

Affirmed.