Argued and submitted February 6, affirmed May 6, 1980

VAUGHN,
*Respondent,*

*v.*

PACIFIC NORTHWEST BELL
TELEPHONE COMPANY,
*Petitioner.*

(TC A7803-03484, CA 11708, SC 26385)

611 P2d 281

Jonathan T. Harnish, of Bullard, Korshoj & Smith, P. C., Portland, argued the cause and filed the brief for petitioner.

Robert K. Udziela, Portland, argued the cause for respondent. With him on the briefs were Pozzi, Wilson, Atchison, Kahn and O'Leary, Portland.

Before Denecke, Chief Justice, and Tongue, Howell, Lent, Linde and Peterson, Justices.

LENT, J.

## LENT, J.

The issue in this case is the proper relationship between two possible remedies available to a discharged employee: (a) the grievance and arbitration remedy in the collective bargaining agreement and (b) the suit pursuant to ORS 659.121(1)[1] for injunctive relief from unlawful employment practices.

The plaintiff, Sandra Vaughn, on March 3, 1978, filed a complaint in circuit court alleging that on August 30, 1977, she sustained an injury compensable under the Workers' Compensation Law in the course of her employment with defendant, Pacific Northwest Bell Telephone Company, that on February 1, 1978, she presented defendant with a physician's certificate which approved her return to her regular employment, and that defendant committed an unlawful employment practice by refusing to reemploy her. The plaintiff sought a money judgment for lost wages, an order reinstating plaintiff to her job, an order restraining defendant from engaging in the unlawful employment practice, punitive damages, and attorneys' fees.

The defendant in its answer admitted that plaintiff sustained an injury and that in February, 1978, she presented a physician's certificate which indicated she could return to work. The defendant alleged as affirmative defenses: (1) that on or about

---

[1] ORS 659.121(1) provides:

"(1) Any person claiming to be aggrieved by an unlawful employment practice prohibited by ORS 659.024, 659.026, 659.030, 659.410, 659.415 or subsection (1) of 659.425 may file a civil suit in circuit court for injunctive relief and the court may order such other equitable relief as may be appropriate, including but not limited to reinstatement or the hiring of employes with or without back pay. Back pay liability shall not accrue from a date more than two years prior to the filing of a complaint with the Labor Commissioner, pursuant to ORS 659.040, or if no such complaint has first been filed, then, more than two years prior to the filing of the civil suit provided for in ORS 659.040, 659.045, 659.095 and this section. In any suit brought under this subsection, the court may allow the prevailing party costs and reasonable attorney fees."

This subsection has been amended, Or Laws 1979, ch 813, § 2, in particulars not important to this decision.

December 8, 1977, the plaintiff had failed to accept proffered work on a restricted basis which was suitable to her physical condition, and (2) that defendant terminated plaintiff effective December 30, 1977, because plaintiff had misrepresented her physical condition and the extent of disability.

The defendant moved for summary judgment on the ground that the circuit court lacked jurisdiction[2] to grant the relief requested by the plaintiff. An affidavit submitted by defendant asserted the following additional facts. The plaintiff is a member of a bargaining unit represented by the Communication Workers of America (hereinafter "Union"). The defendant and Union are parties to a collective bargaining agreement dated August 7, 1977. The plaintiff received a termination letter on January 28, 1978, notifying plaintiff she was terminated as of December 30, 1977. The plaintiff initiated the grievance procedure on February 1, 1978. Grievance hearings were held on February 7, February 13, and March 3, 1978. The final grievance hearing provided for in the agreement had not been held when plaintiff commenced her suit.

The defendant argued that the plaintiff's discharge is a matter covered by the collective bargaining agreement;[3] therefore, the grievance procedures con-

---

[2] Although the defendant argues that the circuit court lacked "jurisdiction," the defendant is actually arguing that the grievance and arbitration procedures in the collective bargaining agreement provide plaintiff's exclusive remedy; therefore, the circuit court should abate the suit pending the outcome of the arbitration proceeding.

[3] The collective bargaining agreement provides in relevant part:

"ARTICLE 8
"Arbitration

"Section 8.1. Except as otherwise provided in this Contract, if a grievance has been handled in accordance with the provisions of Article 7 of this Contract and has not been satisfactorily adjusted, the Union within thirty (30) days after the Company has given its final answer at the Vice President-Personnel level, may request that the grievance be arbitrated. After such request has been made, the grievance shall be arbitrated subject to the following conditions:

stitute plaintiff's exclusive remedy. The plaintiff argued that the grievance procedures in the collective

"(a)  The provisions for arbitration shall apply only to controversies brought by the Union against the Company regarding the true intent and meaning of any provisions of this Contract, or regarding a claim that a commitment made in this Contract has not been fulfilled.

"* * * * *."

"Section 8.2. The decision of the arbitrator shall be final and binding on both parties and the Company and the Union agree to abide by such decision.

"* * * * *."

"ARTICLE 9
"Suspensions and Dismissals

"Section 9.1. The Company recognizes the right of the Union to assist an employee who has been suspended pending investigation or who has been given notice of dismissal, or who has been dismissed, in presenting and/or appealing his or her case to the Company, subject to the following:

"* * * *

"(b)  Any suspended or dismissed employee shall have his or her case investigated by successive levels of management in his or her particular department, up to and including the General Department head or an authorized representative, provided the employee makes a written request of the Company within twenty (20) calendar days of the notice of suspension or dismissal.

"* * * * *

"(d)  If a regular employee having six (6) months or more net credited service is dismissed, the matter will be subject to the grievance procedure set forth in Article 7, provided the dismissed employee makes written request to the Company for such procedure within twenty (20) calendar days of the dismissal. If the dismissed employee has one (1) year or more net credited service and the matter has not been settled under the grievance procedure set forth in Article 7, the Union may require that the matter be submitted to arbitration pursuant to the provisions of Article 8. If the dismissed employee has less than one (1) year net credited service, the matter shall not be subject to arbitration.

"(e)  The arbitrator shall determine whether the suspension or the dismissal was for just cause, but the judgment of the arbitrator may be substituted for that of the Company only if the arbitrator finds that the Company acted without making a reasonable investigation or that it acted upon evidence that would not have led a reasonable person to take such action."

bargaining agreement are irrelevant because her claim is based on an independent statutory scheme for relief from unlawful employment practices pursuant to ORS 659.121, 659.410, and 659.415.[4]

The circuit court granted the defendant's motion for summary judgment and the plaintiff appealed to the Court of Appeals. The Court of Appeals reversed the summary judgment order, holding that plaintiff's statutory claim was an independent remedy which is not foreclosed by the availability of grievance procedures under a collective bargaining agreement. *Vaughn v. Pacific NW Bell,* 40 Or App 427, 432-433, 595 P2d 829 (1979). This court allowed review, ORS 2.520; 288 Or 81 (1979).

The defendant raises three basic contentions on appeal: first, that because the plaintiff was dis-

---

[4] ORS 659.121 is quoted in relevant part at note 1. At the time this suit was commenced, ORS 659.410 and 659.415 were as follows:

ORS 659.410:

"It is an unlawful employment practice for an employer to discriminate against a workman with respect to hire or tenure or any term or condition of employment because the workman has applied for benefits or invoked or utilized the procedures provided for in ORS 656.001 to 656.794 and 656.802 to 656.824, or of 659.400 to 659.435 or has given testimony under the provisions of such sections."

ORS 659.415:

"A workman who has sustained a compensable injury shall be reinstated by his employer to his former position of employment or employment which is available and suitable upon demand for such reinstatement, provided that the workman is not disabled from performing the duties of such position. A certificate by a duly licensed physician that the physician approves the workman's return to his regular employment shall be prima facie evidence that the workman is able to perform such duties."

ORS 659.415 was amended, Or Laws 1979, ch 813, § 3, to add a subsection (2):

"(2) Any violation of this section is an unlawful employment practice."

This amendment appears to be merely a clarification of ORS 659.415, since ORS 659.121 in its original and present form refers to the "unlawful employment practice" prohibited by ORS 659.415. Or Laws 1977, ch 453, § 6.

charged prior to her demand for reinstatement, she cannot bring suit for injunctive relief pursuant to ORS 659.121(1); second, that under both federal and state law, the collective bargaining agreement constitutes plaintiff's exclusive remedy; and third, that the plaintiff is required to exhaust the grievance remedy before she can seek judicial relief.

## I. The timing of the discharge

■　　The defendant first claims that because the plaintiff was discharged in January, 1978, prior to her demand for reinstatement in February, 1978, she cannot bring suit for injunctive relief pursuant to ORS 659.121(1) and 659. 415; and, therefore she is limited to the grievance and arbitration remedies in the collective bargaining agreement.

ORS 659.415 provides that a worker who has sustained a compensable injury "shall be reinstated." The defendant argues that the statute forbids only "nonreinstatement" of a worker after the worker has made a demand for reinstatement. The defendant concludes that because the plaintiff was discharged prior to a demand for reinstatement, she is left only the remedies in the collective bargaining agreement.

We reject this argument because "nonreinstatement" and "discharge" mean the same thing to a worker, and the timing of such a discharge should not by itself determine the worker's forum for seeking a remedy. The scenario of worker discharges following a compensable injury and lost time can fall into two patterns: (1) the worker loses time due to a compensable injury, demands reinstatement, and is refused reinstatement, that is, is "discharged" *after* the demand; or (2) a worker loses time due to a compensable injury, is notified *during* this time that he is discharged, and then demands reinstatement. It might seem that ORS 659.415 requires reinstatement of the worker even if the employer has just cause to "discharge" by refusing to reinstate, but, as will appear later, nothing in ORS Chapter 659 prevents an em-

ployer from discharging a worker for just cause. If the worker is discharged for just cause, the employer can prove this in the grievance proceeding or as a matter of defense in a suit pursuant to ORS 659.121. The worker's right to bring suit for injunctive relief pursuant to ORS 659.121(1) must be based on reasoned policy rather than fortuitous timing.

## II. The exclusivity of the remedies in the collective bargaining agreement

The defendant claims that the grievance and arbitration procedures under the collective bargaining agreement provide plaintiff's exclusive remedy. The defendant argues that federal law favoring exclusivity of arbitration remedies preempts the state statutes in this case. The defendant also argues that even if the statutes are not preempted, state law also requires exclusivity of the arbitration remedies.

### A. Federal preemption

■ The plaintiff as a member of the Union is subject to the collective bargaining agreement executed by the Union. The Union represents the employees in an industry affecting interstate commerce. NLRA § 301(b), 29 USC § 185. The defendant is an "employer" within the meaning of and subject to the National Labor Relations Act, NLRA § 2(2), 29 USC § 152. The claim in this case involves an employee discharge, which is a matter covered by the collective bargaining agreement. The defendant argues that these undisputed facts require that federal law be applied, and that federal law favoring exclusivity of grievance remedies preempts the state laws in this case.

The defendant characterizes this lawsuit as an employee's suit to enforce rights under the collective bargaining agreement, that is, the right not to be discharged except for just cause. In *Textile Workers v. Lincoln Mills,* 353 US 448, 456-457, 77 S Ct 912, 1 L Ed2d 972 (1957), the Supreme Court held that federal law must be applied in actions to enforce rights under a collective bargaining agreement.

We could answer the defendant's preemption argument by construing plaintiff's lawsuit as a suit to enforce independent statutory rights, not a suit to enforce rights under the collective bargaining agreement; therefore, federal law does not preempt. Our examination of federal law, however, leads us to conclude that even if federal law is applied, the statutes in this case are not preempted.

In *Republic Steel Corp. v. Maddox,* 379 US 650, 85 S Ct 614, 13 L Ed2d 580 (1965), the Supreme Court cited the legislative policy in § 203(d) of the Labor Management Relations Act of 1947 (LMRA), 29 USC § 173(d), which states in effect that contract grievance procedures are a preferred method for settling labor disputes.[5] The Court stated, "If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement." 379 US at 653. The Court pointed out that the Union's handling of grievance procedures complements its status as exclusive bargaining representative. The Court also pointed out that a rule favoring exclusivity gives the union and the employer the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. 379 US at 653. The Court held that the federal rule favoring exclusivity of grievance remedies preempted a state law which did not require resort to grievance procedures in an action for workers' severance pay. 379 US at 657.

The Supreme Court has stated that federal labor law will preempt state law when the exercise of state power over a particular area of activity threatens interference with clearly indicated federal labor policy. *San Diego Building Trades Council v. Garmon,* 359 US 236, 243, 79 S Ct 773, 3 L Ed2d 775 (1959).

---

[5] Section 203(d) of the Labor-Management Relations Act of 1947, 29 USC § 173(d) provides:

"Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement."

The Court, however, has also stated that states do have power to regulate activity which is a "peripheral concern" of the Labor Management Relations Act, or where the regulated conduct touches interests "deeply rooted in local feeling and responsibility." *San Diego Building Trades Council v. Garmon, supra,* 359 US at 243-244. The Court has also left states free to act "where the particular rule of law sought to be invoked before another tribunal is so structured and administered that, in virtually all instances, it is safe to presume that judicial supervision will not disserve the interests promoted by the federal labor statutes." *Motor Coach Employees v. Lockridge,* 403 US 274, 297-298, 91 S Ct 1909, 29 L Ed2d 473 (1971). Cf., *Farmer v. Carpenters,* 430 US 290, 300, 97 S Ct 1056, 51 L Ed2d 338 (1977).

The statutes in this case, ORS 659.121, 659.410, and 659.415, are part of ORS Chapter 659, which, in toto, is concerned with enforcement of civil rights and with unlawful employment practices. These particular statutes protect employees receiving workers' compensation benefits from retaliatory discrimination by employers. These statutes apply whether or not the employee is subject to a collective bargaining agreement.

The prevention of employment discrimination against workers receiving a state administered compensation award is a matter of particular state responsibility and concern. Cf., *Brown v. Transcon Lines,* 284 Or 597, 607-609, 588 P2d 1087 (1978). The state has a substantial interest in protecting the integrity of its workers' compensation system. The claim asserted in court by this plaintiff is that the defendant has unlawfully retaliated against her for assertion of her rights under the Workers' Compensation Law. Judicial supervision and determination of such a claim does not disserve the interests promoted by federal labor relations law. Cf., *Franklin Mfg. Co. v. Iowa Civil Rights Com'n,* 270 NW2d 829 (Iowa 1978); *Goodyear Tire and Rubber v. Dept. of Industry,* 87 Wis2d 56, 273

NW2d 786, 796-799 (1978). We agree with the conclusion of the Court of Appeals that these statutes are not preempted by federal law. 40 Or App at 434-435.

## B.  Exclusivity of remedies under state law

The defendant argues that even if the state statutes in this case are not preempted by federal law, state law prohibits injunctive relief in this case and requires the remedies in the collective bargaining agreement to be exclusive.

■ ■    The defendant argues that ORS 662.040[6] prohibits any injunction in this case. ORS 662.040 provides that no injunction shall issue in a case involving a labor dispute, except in limited situations not applicable to this case. We need not decide whether this involves a "labor dispute" because we reject defendant's argument on the ground that the legislature provided the suit for injunctive relief in ORS 659.121 after it enacted the broad prohibition against injunctions in ORS 662.040. The court assumes that the legislature was aware of the general prohibition in ORS 662.040 when it subsequently enacted the specific provision for injunction in ORS 659.121. This court will avoid a construction which creates a conflict between statutes or renders one statute ineffective. *Thompson v. IDS Ins. Co.,* 274 Or 649, 653-654, 549 P2d 510 (1976).

■    The defendant also argues that legislative policy and Oregon case law state that the remedies in a collective bargaining agreement should be exclusive. ORS 662.405[7] provides that the best interests of

---

[6] ORS 662.040 provides:

"No court, nor any judge thereof, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in strict conformity with ORS 662.010 to 662.130, nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in ORS 662.020."

[7] ORS 662.405 provides:

"It hereby is declared to be the public policy of the State of Oregon that the best interests of the people of this state are served by fostering

employers and employees can most satisfactorily be secured by the settlement of issues through collective bargaining and arbitration. Cf., § 203(d) (LMRA), 29 USC § 173(d). This statute reflects a policy favoring resort to collective bargaining remedies but does not mandate absolute exclusivity of these remedies.

In *State ex rel Nilsen v. Berry,* 248 Or 391, 434 P2d 471 (1967), this court followed the reasoning of the United States Supreme Court in *Republic Steel Corp. v. Maddox, supra,* and held that the policy favoring resort to collective bargaining agreement remedies requires that a worker must first utilize the grievance procedures before the Labor Commissioner may institute an action in circuit court for overtime pay pursuant to ORS 652.330.

In *Wagner v. Columbia Hospital Dist.,* 259 Or 15, 485 P2d 421 (1971), this court stated that in the "normal situation" employees are bound by the terms of their labor agreement which requires all disputes over discharges to be submitted to arbitration. The court stated that in such situations any legal proceeding may be abated, and an arbitration award would not be reviewed by the court for errors of either fact or law. 259 Or at 24. The plaintiff in *Wagner,* however, had alleged facts which indicated that the arbitration remedy would be "useless and futile," and the court, therefore, concluded the arbitration remedy was not exclusive. 259 Or at 27-28.

---

· collective bargaining and by the prevention of or the prompt settlement of labor controversies, strikes and lockouts; that sound and stable industrial peace and the advancement of the general welfare of the state and of the best interests of employers and employes can most satisfactorily be secured by the settlement of issues between employers and employes through the processes of conference and collective bargaining between employers and employes; that the settlement of issues between employers and employes through collective bargaining may be advanced by making available full and adequate government facilities for conciliation, mediation and voluntary arbitration to aid and encourage employers and employes to reach and maintain agreements concerning rates of pay, hours and working conditions and to make all reasonable efforts to settle their differences by mutual agreement reached through conferences and collective bargaining."

In *Gilstrap v. Mitchell Bros. Truck Lines,* 270 Or 599, 529 P2d 370 (1974), this court restated the general rule that in the ordinary situation an employee who is subject to a collective bargaining agreement must utilize the contract procedures as the vehicle for redress. 270 Or at 606. The court reviewed three recognized exceptions to the rule of exclusivity: (1) when the union breaches its duty of fair representation, 270 Or at 607 (cf., *Vaca v. Sipes,* 386 US 171, 87 S Ct 903, 17 L Ed2d 842 (1967)); (2) when recourse to grievance procedures would be futile, 270 Or at 612; and (3) when the employer repudiates or is otherwise estopped from relying on the grievance procedures, 270 Or at 612, n. 8. The court held that the plaintiffs in *Gilstrap* had shown that their situation came within the first two exceptions and, therefore, they could seek a remedy in court for damages for breach of the collective bargaining agreement.

The pleadings in the present case do not plead any of the exceptions outlined in *Gilstrap, supra.* Rather, the present case involves a statutory scheme which gives an employee a personal judicial remedy, thus challenging ORS 662.405 and any other policy favoring exclusivity of collective bargaining agreement remedies.

The defendant argues, however, that the state policy favoring exclusivity of collective bargaining agreement remedies require that the statutes in this case be construed to apply only to workers not covered by a collective bargaining agreement.

In *US Bulk Carriers v. Arguelles,* 400 US 351, 362, 91 S Ct 409, 27 L Ed2d 456 (1971), Justice Harlan in his concurring opinion characterized the strong policy concerns which support exclusivity of arbitration procedures as a "presumption of comprehensiveness." 400 US at 361-362. He then concluded that the presumption of exclusivity or comprehensiveness can be rebutted when a plaintiff asserts an independent federal statutory claim. 400 US at 362. The Court's

duty then was to fashion the relationships between the arbitral and judicial forums according to an analysis of the policies underpinning the arbitration remedies and the statutory scheme. 400 US at 363.

In *Alexander v. Gardner-Denver Co.,* 415 US 36, 94 S Ct 1011, 39 L Ed2d 147 (1974), the Supreme Court discussed the exclusivity of the collective bargaining agreement remedies in the context of a discharged employee's statutory claim. The plaintiff, a black employee, was informed by the company that he was being discharged for producing too many defective parts. He invoked the grievance procedure under his union's collective bargaining agreement and an arbitrator ultimately determined that Alexander had been discharged for just cause. Alexander then brought an action under Title VII of the Civil Rights Act of 1974, 42 USC § 2000(e), *et seq,* claiming he was the victim of racial discrimination. The district court granted summary judgment for the company, holding that the collective bargaining agreement was the worker's exclusive remedy. In a unanimous opinion, the Supreme Court held that plaintiff was entitled to a trial de novo because the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under Title VII. The Court concluded that the statutory scheme provided a personal cause of action which supplemented existing remedies in a collective bargaining agreement. 415 US at 49.

The Supreme Court decisions in *US Bulk Carriers v. Arguelles, supra,* and *Alexander v. Gardner-Denver Co., supra,* are not controlling in this case, but nonetheless provide helpful analogies. Justice Harlan's analysis in *US Bulk Carriers* of the "presumption of exclusivity" which can be overcome by evidence of an independent statutory scheme offers a useful analogy in this case. This court and the legislature have articulated a policy of exclusivity of collective bargaining agreement remedies. Cf., *Gilstrap v. Mitchell Bros. Truck Lines, supra, Wagner v. Columbia*

*Hospital Dist., supra; State ex rel Nilsen v. Berry, supra;* ORS 662.405. This court has also recognized exceptions to the policy of exclusivity, or stated in similar terms, factors which will overcome a "presumption of exclusivity." Cf., *Gilstrap v. Mitchell Bros. Truck Lines, supra.*

■    The statutory scheme in ORS 659.121(1), 659.410, and 659.415 providing a personal action for an employee claiming discrimination is similar to the statutory scheme in Title VII, as outlined in *Alexander v. Gardner-Denver Co., supra.* We conclude that the existence of this statutory scheme in ORS 659.121, 659.410, and 659.415 providing a personal cause of action is sufficient to override the preexisting policy favoring exclusivity of the collective bargaining agreement remedies in this case. Although our legislative history does not clarify the relationship of these statutes to collective bargaining agreement remedies, we conclude that these statutes were intended to afford an alternative or to supplement existing remedies in a collective bargaining agreement.[8] Cf., *Alexander v. Gardner-Denver Co., supra; Bald v. RCA Alascan,* 569 P2d 1328, 1334 (Alaska 1977); *Moss-American, Inc. v. Fair Employment Practices Com'n,* 22 Ill App 3d 248, 317 NE2d 343 (1974).

.    The defendant argues that the claim of racial discrimination in *Alexander* should be distinguished from the plaintiff's claim in this case; therefore, the analysis in *Alexander* is not applicable. The defendant urges that the compelling policy considerations behind Title VII to prohibit racial or other antiminority discrimination are not present in this case. The defendant also cites ORS 659.020(2) which declares

---

[8] We note that the Oregon AFL-CIO spoke in favor of the recent amendments to ORS 659.121 and ORS 659.415 which clarified that violation of ORS 659.415 was an unlawful employment practice. 1977 Or Laws, ch 813; Senate Committee on Labor, Consumer and Business Affairs, SB 199, Exhibit B, May 8, 1979. This indicates that organized labor supports the existence of the private cause of action in ORS 659.121. No mention was made of the exclusivity of the collective bargaining agreement remedies.

that the opportunity to obtain employment without discrimination because of race, religion, color, sex, marital status, or national origin is a civil right in Oregon. The defendant argues that the legislature has not attached similar importance to employment discrimination on the basis of receipt of workers' compensation benefits.

We reject this argument because ORS 659.410 and 659.415 make it an unlawful employment practice to discriminate against a worker because that worker has utilized the workers' compensation system. These statutes were sections 4 and 5 of Oregon Laws 1973, chapter 660, entitled, "An Act relating to handicapped persons." Although these statutes protect employees' rights to utilize the workers' compensation system without employer retaliation, we construe these statutes to be an integral part of the legislative scheme to prohibit employment discrimination on the basis of physical or mental handicap. Cf., Or Const. Art IV, § 20; House State and Federal Affairs Committee, HB 3057, Exhibits of May 23, 1973, June 12, 1973.

■ ORS 659.121(1) provides a civil suit for injunctive relief for unlawful employment discrimination on nine different grounds: (1) race, religion, color, sex, national origin, marital status, age (ORS 659.030); (2) application for workers' compensation benefits (ORS 659.410, 659.415); and (3) physical or mental handicap which does not prevent performance of the work involved (ORS 659 425(1)). The Oregon legislature in ORS 659.121(1) did not assign priorities to the various types of employment discrimination. We conclude that a worker claiming any type of unlawful employment discrimination listed in ORS 659.121(1) is entitled to bring suit for injunctive relief pursuant to that statute, notwithstanding the availability of a remedy under the collective bargaining agreement. We reject defendant's argument that workers who have a remedy under a collective bargaining agreement are limited to that exclusive remedy. We hold that the state policy favoring exclusivity of collective

bargaining agreement remedies does not foreclose the plaintiff's right to seek injunctive relief in this case.

### III. Exhaustion of the collective bargaining agreement remedies

We have concluded that the plaintiff's suit for injunctive relief pursuant to ORS 659.121 is not foreclosed because of the timing of the discharge, is not preempted by federal law, and is not precluded by a state rule favoring exclusivity of collective bargaining agreement remedies. The defendant's final argument is that the state policy favoring resort to collective bargaining agreement remedies requires the plaintiff to exhaust her remedies in the collective bargaining agreement before filing a suit pursuant to ORS 659.121(1).

A rule of exhaustion in labor law cases was established in *Republic Steel Corp. v. Maddox, supra,* 379 US at 652, where the Supreme Court stated that federal labor policy favoring resort to grievance procedures required individuals wishing to assert contract grievances to attempt use of the procedures in the collective bargaining agreement as the mode of redress. This court cited the *Maddox* rule in *State ex rel Nilsen v. Berry, supra,* 248 Or at 395-396; *Wagner v. Columbia Hospital Dist., supra,* 259 Or at 21-22; and *Gilstrap v. Mitchell Bros. Truck Lines, supra,* 270 Or at 606.

In *Alexander v. Gardner-Denver Co., supra,* the Supreme Court was not faced with an exhaustion issue because the plaintiff had already completed the grievance and arbitration procedures. An arbitrator had concluded that the plaintiff had been discharged for just cause and the sole issue before the Court was whether the plaintiff was entitled to a trial de novo on the discrimination claim under Title VII. The Court stated that the trial court should not defer to an arbitrator's determination because an arbitrator's task is necessarily limited to effectuating the terms of a collective bargaining agreement; an arbitrator

cannot decide a statutory discrimination claim involving public law concepts. 415 US at 56-59. The Court concluded that in instituting the statutory discrimination claim, the employee is not seeking *review* of the arbitrator's decision, rather he is asserting a statutory right independent of the arbitration process. 415 US at 54.

■      We have previously concluded that the suit for injunctive relief in ORS 659.121(1) was intended to supplement or to provide an alternative to existing remedies in a collective bargaining agreement. The plaintiff's statutory claim, like a Title VII claim, is an independent remedy for vindication of statutory rights. The scope of an arbitrator's powers are determined by the agreement of the parties, and in this case, the parties have limited the arbitrator's authority to resolution of controversies regarding commitments made in the collective bargaining agreement.[9] An arbitrator in this case, therefore, has no authority to decide the merits of plaintiff's statutory claim. Cf., M. Trotta, Labor Arbitration, p. 81-84 (1961); *Swanson v. Van Duyn Choc. Shops,* 282 Or 491, 466-497 n. 3, 579 P2d 239 (1978). An exhaustion requirement is, therefore, inapplicable in these circumstances. Cf., *Kewin v. Board of Ed. of Melvindale,* 65 Mich App 472, 237 NW2d 514, 517-518 (1975).

The plaintiff in her statutory claim asserts that the discharge was for an unlawful cause. The employer must defend on the merits of that claim. The question then is what effect the employer's evidence of just cause for discharge has on the court's remedial authority in ORS 659.121(1).

■      We start with the recognized rule that in the absence of a contract or statute to the contrary, an employer may discharge an employee for any cause. *Yartzoff v. Democratic-Herald Publishing Co.,* 281 Or 651, 655, 576 P2d 356 (1978). A collective bar-

---

[9] See Section 8.1(a) of the collective bargaining agreement in this case, quoted at note 3 *supra.*

gaining agreement usually contains a provision imply-
ing that an employer can discharge only for just cause.
Cf., *Swanson v. Van Duyn Choc. Shops,* 282 Or 491,
495, 579 P2d 239 (1978). It is implicit in the collective
bargaining agreement in this case that the employer
can discharge an employee only if just cause is
shown.[10]

■       We find a useful analogy in employee dis-
charge cases before the National Labor Relations
Board (NLRB) and the State Employment Relations
Board (ERB). Neither the State Labor Management
Relations Act, ORS 663.005-663.295, nor the National
Labor Relations Act, 29 USC § 141 *et seq.* interfere
with an employer's right to discharge unless the dis-
charge is inspired by a discriminatory motive pros-
cribed by statute. ORS 663.195(3) and Section 10(c) of
the NLRA, 29 USC § 160(c), each state that no order of
reinstatement or back pay can be made where a dis-
charge was "for cause." Therefore, an employer may
discharge for cause and not violate the statutory dis-
crimination provisions. But an employer may not dis-
charge if the motivation is discrimination proscribed
by statute. A discharge motivated by unlawful dis-
crimination is not a discharge "for cause." *NLRB v.
Washington Aluminum Co.,* 370 US 9, 82 S Ct 1099, 8
L Ed2d 298 (1962).

■       The record in many discharge cases indicates
that an employee discharge was motivated in part by a
poor work record or misconduct, and in part by unlaw-
ful discrimination by the employer. R. Gorman, Basic
Text on Labor Law 138 (1976). In such cases, the labor
relations board as the party charging discrimination
has the burden of proving by a preponderance of the
evidence that the employer has engaged in or is engag-
ing in an unfair labor practice. ORS 663.195(1), § 10(c)
NLRA, 29 USC § 160(c). Although there is no clear
consensus as to what is the necessary quan-

---

[10] See Section 9.1(e) of the collective bargaining agreement in this case,
quoted at note 3 *supra.*

tum of improper motive to constitute a statutory violation in an employee discharge case, the board usually must prove that the employee would not have been fired but for the unlawful, discriminatory motive of the employer. Therefore, an employer can have "dominant motives, mixed motives, equal motives, concurrent motives, and a bewildering combination of these." *NLRB v. Whitford Pickle Co.,* 374 F2d 576, 582 (5th Cir. 1967). Unless the board can show, however, that the employee would not have been discharged but for the unlawful motive, the employer is free to discharge upon any showing of just cause.

■■■ There is no indication that the legislature in allowing the suit for injunctive relief in ORS 659.121 intended to change the existing law regarding an employer's right to discharge an employee for cause. The standards in ORS 663.195 for holding an employer responsible for an unfair labor practice are applicable by analogy to the suit for injunctive relief in ORS 659.121. The court cannot order reinstatement or back pay unless it finds that the employee would not have been discharged but for the unlawful discriminatory motive of the employer. It remains for the circuit court in this case to receive the evidence and make its own findings as to the reasons for plaintiff's discharge.

The decision of the Court of Appeals reversing the summary judgment order for the defendant is affirmed.