Argued and submitted December 7, 1981, affirmed May 4, 1982

SIMPSON et al,
*Petitioners on Review,*
*v.*
WESTERN GRAPHICS CORPORATION,
*Respondent on Review.*
(CA 17979,   SC 28052)
643 P2d 1276

Henry H. Drummonds, Eugene, argued the cause for petitioners. With him on the petition and briefs was Kulongoski, Heid, Durham & Drummonds, Eugene.

Arthur C. Johnson, Eugene, argued the cause for respondent. With him on the brief were R. Scott Palmer and Johnson, Harrang, Swanson & Long, Eugene.

TANZER, J.

Lent, J., filed a dissenting opinion in which Linde, J., joined.

## TANZER, J.

Plaintiffs are former employees of defendant who were discharged for allegedly threatening violence against another employee. They brought this breach of contract action for reinstatement and back pay, claiming that they were discharged without "just cause," contrary to the provisions of defendant's Employee Handbook. The case was tried to the court. It found that plaintiffs were discharged for just cause and it entered judgment for defendant. The Court of Appeals affirmed. Plaintiffs contend that the courts below erred because the court, not just the employer, must find that the facts constituting just cause for discharge actually exist.

The facts relevant to our disposition of this appeal are not disputed. When plaintiffs began their employment they were given a copy of defendant's Employee Handbook. The handbook provides that employees will be dismissed only for "just cause." Plaintiffs were dismissed after their supervisor determined that they had made threats of violence against another employee. Plaintiffs deny having made such threats. Plaintiffs then brought this action. The trial court made the following Findings of Fact and Conclusions of Law:

"8. The defendant (1) investigated the facts claimed to be the basis for discharge (alleged threats by plaintiffs to other employee), (2) notified the plaintiffs of the claimed facts, and (3) afforded the employees an opportunity to present their side.

"9. Defendant discharged plaintiffs for reasons the defendant, through defendant's agent, reasonably believed the truth, and defendant made a good faith determination that sufficient cause for discharge existed.

"10. It was reasonable for defendant's agents to conclude from the employees' responses that the facts ascertained were confirmed. The employer did investigate and determine that evidence of threats existed and reasonably believed the same in good faith.

"11. The Court makes no finding with respect to whether threats (as opposed to statements made in jest) were in fact made and intended to frighten the other employee, because the same is unnecessary to determine the issues herein.

\* \* \* \* \*

## "CONCLUSIONS OF LAW

"1. To constitute 'just cause,' the employer (or agent of the employer) must make a good faith determination of a sufficient cause for discharge based on facts reasonably believed to be true and not for any arbitrary, capricious, or illegal reason. It is not necessary that the alleged reason for discharge (intentional threats against fellow employee) actually in fact has occurred, but only that the evidence of threats existed which the employer reasonably believed in good faith after an investigation.

"2. The plaintiffs' discharge was for just cause as defined above.

* * * * *"

On review, plaintiffs challenge the trial court's refusal to find whether the alleged threats were made. The Court of Appeals concluded that the trial court was correct. It held that where a private employer adopts a policy of discharging employees only for just cause, a trial court reviewing the discharge need only find that there was substantial evidence to support the employer's decision and that the employer believed the evidence and acted in good faith. Accordingly, the court affirmed the judgment for defendant. We allowed review to consider whether by agreeing to discharge employees only for "just cause," a private employer also relinquishes its right to determine whether facts constituting just cause exist.

■ In the absence of a contract, statute or constitutional requirement to the contrary, an employee may quit or an employer may discharge an employee at any time. *See, Vaughn v. Pacific Northwest Bell Telephone,* 289 Or 73, 90, 611 P2d 281 (1980), *Nees v. Hocks,* 272 Or 210, 216, 536 P2d 512 (1975).[1] Here, the parties agree that the terms of the Employee Handbook are contractual terms of the

---

[1] This is not a case of public employment in which procedural due process in some degree may be required for termination, *Tupper v. Fairview Hospital,* 276 Or 657, 556 P2d 1340 (1976); *Hammer v. OSP,* 276 Or 651, 556 P2d 1348 (1976), *vacated and remanded* 434 US 945, 98 S Ct 469, 54 L Ed 2d 306 (1977), or in which entitlement to an independent fact finder may be a question of statutory intent, *see, Thompson v. Secretary of State,* 19 Or App 74, 526 P2d 621 (1974). Arguably, similar protection for private employees should be legislated, *see* C. Summers, *Individual Protection Against Unjust Dismissal,* 62 Va L Rev 481 (1976), or judicially imposed, Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty To Terminate Only In Good Faith,* 93 Harv L Rev 1816 (1980). For resolution of this case, we need not reexamine the existing rule.

plaintiffs' employment. *See, Yartzoff v. Democrat-Herald Publishing Co.,* 281 Or 651, 576 P2d 356 (1978). The handbook's "just cause" provision suggests two distinct questions: (1) what is the meaning of just cause; and (2) who makes the requisite factual determination. Here, there is no dispute about the first question. The parties agree that the clause is a substantive restriction of the employer's rights to terminate employment at will and that if plaintiffs' alleged conduct occurred it constituted just cause. Consequently, we do not determine what fact constitutes just cause, or who decides whether the facts constitute just cause. Only the second question is in issue. On that issue the Employee Handbook is silent. It contains no express contractual transfer of this management decisional prerogative.

■      Transfer of employer prerogatives can also be accomplished implicitly by accepted practice or mutual tacit understanding. In an analogous case, where no express just cause requirement was stated in a labor contract and where there was no extrinsic basis to find an implicit agreement, we declined to read a "just cause" requirement into the arbitration provision of the contract, *Swanson v. Van Duyn Choc. Shops,* 282 Or 491, 579 P2d 239 (1978).

■      Here, the converse is true: there is a just cause provision, but no express provision transferring authority to make factual determinations from the employer to another arbiter. Neither is there reason to infer that such a meaning was intended by the terms of the Employee Handbook. Although an employer's statement of employment policy has a degree of contractual effect, *see Yartzoff v. Democrat-Herald Publishing Co., supra,* its terms are not necessarily to be construed in the same way as those of a negotiated labor contract. The handbook was not negotiated. It is a unilateral statement by the employer of self-imposed limitations upon its prerogatives. It was furnished to plaintiffs after they were hired and the evidence affords no inference that they accepted or continued in employment in reliance upon its terms. In such a situation, the meaning intended by the drafter, the employer, is controlling and there is no reason to infer that the employer intended to surrender its power to determine whether facts constituting cause for

termination exist. Nor is there evidence of extrinsic agreement, practice or mutual understanding to that effect. In the absence of any evidence of express or implied agreement whereby the employer contracted away its fact-finding prerogative to some other arbiter, we shall not infer it.

The arbitration cases cited by plaintiffs are fundamentally different from this one. Disputes go to arbitration precisely because the parties agreed that they should do so. Here, conversely, the employer agreed to the substantive standard embodied in the term "just cause," but did not agree to a secondary level of fact-finding authority.

The trial court finding that the defendant-employer acted on the basis of the employer's determination that facts constituting just cause existed was proper.

The decision of the Court of Appeals is affirmed.

**LENT, J.,** dissenting.

As the majority observes, the parties agree that the terms of the Employee Handbook are contractual terms of the plaintiffs' employment. That contract enjoins the employer from discharging the employee unless there is "just cause" for discharge. The majority concludes that the absence of the actual occurrence of just cause is irrelevant as long as: (1) there is some evidence of the existence of facts constituting just cause, and (2) the employer believes that evidence and acts in good faith. The majority holds that whether facts constituting just cause actually exist need not be established because the employer never contracted away its common law right to decide unilaterally whether those facts exist.

Ordinarily, if a contract gives one party a right to act with respect to the interests of the other party upon the happening of an event or fulfillment of a condition, the happening or fulfillment is a necessary predicate to exercise of the right. That the party who acts does so because there is evidence which leads that party mistakenly, albeit in good faith, to believe that the event or condition has happened is not good enough. The party injured by the action will find redress in the courts for injury resulting

from the action, and the other party will not be heard to say that it is irrelevant whether the event or condition actually happened.

Suppose that the Employee Handbook provided that an employee could be discharged for tardiness only if the employee were tardy more than ten times in a quarter year. Because of an honest error in keeping time records, the timekeeper informs the employer that a certain employee has been tardy eleven times in the first two months of the quarter. The employer, or managing employee with the power to fire, examines the evidence produced by the timekeeper, believes it and acts upon it in good faith by firing the putative latecomer. I cannot believe that as a matter of law it is irrelevant that the fired employee was in fact never tardy, and the employer's belief to the contrary was induced by the timekeeper's mistake. As I understand the majority opinion, however, because the contracting employer did not agree to give up its common law right to decide whether the employee was tardy the requisite number of times, the fired employee would have no redress.

Because I believe this to be a dangerous departure from the rules of contract law, I dissent.

Linde, J., joins in this dissent.