569 P.2d 1328 (1977)
Bernadine BALD, Appellant,
v.
RCA ALASCOM and Teamsters Local 959, Appellees.
No. 2554.
Supreme Court of Alaska.
October 14, 1977.
As Corrected December 8, 1977.
*1329 Robert H. Wagstaff and R. Collin Middleton, Wagstaff & Middleton, Anchorage, for appellant.
Carolyn E. Jones, Asst. Atty. Gen., Richard O. Gantz, Hughes, Thorsness, Gantz, Powell & Brundin, and Lee S. Glass, Johnson, Christenson, Shamberg & Link, Inc., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellees.
Before RABINOWITZ and CONNOR, JJ., and DIMOND, J. Pro Tem.

OPINION
CONNOR, Justice.
In this case, a worker whose religious convictions forbid affiliation with a labor union alleges that she was wrongfully discriminated against by her employer and the union which represents its employees. The issue on appeal does not concern the merits of her allegations, but only whether this case is within the jurisdiction of the state courts. The union and the employer argue that under the principle of federal preemption, exclusive jurisdiction rests with the National Labor Relations Board (NLRB). We have concluded that the courts of Alaska do have jurisdiction over this case.[1]
Bernadine Bald, plaintiff and appellant, was employed as a long-distance telephone operator by defendant and appellee RCA Alaska Communications, Inc. (hereafter "Alascom"). Her position was covered by a union contract with Teamsters Local 959, the other defendant and appellee. The contract contained a union security provision, *1330 requiring all employees to join the union within 30 days of initial employment, and thereafter maintain union membership. The employment was within the coverage of the National Labor Relations Act, 29 U.S.C. § 151 et seq. (NLRA).
Bald is an adherent of the Seventh-Day Adventist faith. That religious persuasion forbids membership in, or contribution to, labor organizations.[2] In August 1974, she ceased paying union dues, and offered to contribute an equivalent sum to a mutually-agreed-upon charity and forego all union benefits. She alleged that Alascom and the Teamsters would not agree to such an accommodation.
She thereupon filed this action in superior court, alleging violations of AS 18.80.220(a)[3] and the federal and state Bills of Rights. She sought damages and declaratory and injunctive relief.
The defendants moved to dismiss on the grounds that the NLRA preempts the field so that she may not rely on the state civil rights laws, and that exclusive jurisdiction to pass upon questions related to the federal act is vested in the NLRB and the federal courts.[4] The trial court on September 24, 1975, granted the motion for want of jurisdiction over the subject matter. From that judgment this appeal was taken. Thus, the merits of Bald's claim are not before us.
At the time of the hearing in superior court, Bald had not been discharged from her job. Her brief states that she was discharged by Alascom, at the request of the Teamsters, after the hearing.

*1331 I
Section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3), permits union security agreements as an exception to its general rule that an employer may not discriminate against a worker because of his membership or nonmembership in a union.[5] Section 8(b)(2), 29 U.S.C. § 158(b)(2), in forbidding unions to discriminate against workers for reasons other than nonpayment of dues, by negative implication permits discrimination for that reason.[6]
The preemption principle is derived from the supremacy clause of article VI of the federal Constitution, which declares that federal law shall be "the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."
The principle is far from easy to apply. No two cases are factually alike. Preemption tests or standards are necessarily phrased in general or abstract terms which are of limited usefulness in applying the principle to a concrete set of facts. In each case, a balance must be struck between the competing demands of federal uniformity and local autonomy. We must look to the policy, intent, and context of the federal statute to determine whether application of the state law would frustrate the operation of the federal one. See generally, e.g., Hines v. Davidowitz, 312 U.S. 52, 66-68, 61 S.Ct. 399, 403-05, 85 L.Ed. 581, 586-87 (1941); Id. at 75-81, 61 S.Ct. at 408-10, 85 L.Ed. at 591-94 (Stone, J., dissenting); G. Gunther, Cases and Materials on Constitutional Law 357-67 (9th ed. 1975); Note, Pre-emption as a preferential Ground: A New Canon of Construction, 12 Stan.L.Rev. 208 (1959).
In the field of labor-management relations, the leading case discussing the principles of preemption is San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). In Garmon, the Supreme Court set aside a state court award of tort damages to an employer against a union for engaging in recognitional picketing. "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected *1332 by ... or constitute an unfair labor practice under [federal labor statutes]," the Court said, exclusive jurisdiction is in the NLRB and state remedies are preempted. Id. at 244, 79 S.Ct. at 779, 3 L.Ed.2d at 782.
Additional light is shed on this subject by two other United States Supreme Court cases. International Association of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018 (1958), held that a state damage remedy for wrongful expulsion from a union was not preempted. The Court reached the opposite result, however, in Street, Electric Railway and Motor Coach Employees v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971), where the union not only expelled the worker but, pursuant to a union shop contract, also procured his dismissal from his job, for tardy payment of dues. In Lockridge, the Court distinguished Gonzales on the ground that Gonzales implicated only internal union matters, while Lockridge concerned the construction of a contract term, the union security clause, which is subject to pervasive and complex federal regulation.
The Garmon court distinguished Gonzales on the ground that wrongful expulsion was "a merely peripheral concern" of the federal labor statutes. 359 U.S. at 243, 79 S.Ct. at 778, 3 L.Ed.2d at 782. On preemption by the NLRA, see generally Farmer v. United Brotherhood of Carpenters and Joiners, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977).
Likewise, the Garmon court cited cases recognizing that there is no federal preemption of "interests ... deeply rooted in local feeling and responsibility" absent clear congressional intent to preempt. 359 U.S. at 244, 79 S.Ct. at 779, 3 L.Ed.2d at 782. The cited cases upheld the states' power to take action to prevent or quell labor-related violence which threatens the public peace.[7] But state employment practices laws have also been held to reflect strong local interests which ought to be recognized if at all possible. DeCanas v. Bica, 424 U.S. 351, 356-58, 96 S.Ct. 933, 936-59, 47 L.Ed.2d 43, 49-50 (1976) (law forbidding hiring of illegal aliens not preempted); Simpson v. Providence Washington Ins. Group, 423 F. Supp. 552, 556 (D.Alaska 1976) (law forbidding discrimination against persons over 65 not preempted). And, as we shall discuss later in this opinion, there is reason to believe that Congress itself assigned the initial battle against employment discrimination to local responsibility when it placed an exhaustion of state remedies requirement in the 1964 Civil Rights Act. 42 U.S.C. § 2000e-5, discussed on pages 13-15 infra.
Courts considering preemption problems somewhat similar to the one facing us have found that state laws were not preempted.
In Colorado Anti-Discrimination Commission v. Continental Air Lines, Inc., 372 U.S. 714, 724, 83 S.Ct. 1022, 1027, 10 L.Ed.2d 84, 91 (1963), it was claimed that Continental had violated state laws against racial discrimination in hiring. Continental answered the claim with the assertion, inter alia, that the Railway Labor Act, 45 U.S.C. § 151 et seq., had preempted the field. The Railway Labor Act is similar to the National Labor Relations Act, and sets out the principles of union recognition and collective bargaining for employees of interstate carriers. The court decided against Continental. Nowhere did that act mention racial discrimination, the Court pointed out. Its purpose of regulating union activity would in no way be frustrated by enforcing state civil rights laws. Even if the purpose of the federal and state laws were the same, the Court said, there is no preemption unless enforcement of the state law would in some way frustrate the aims of the federal one. 372 U.S. at 722, 83 S.Ct. at 1026, 10 L.Ed.2d at 90.
*1333 In Walker Mfg. Co. v. Industrial Comm., 27 Wis.2d 669, 135 N.W.2d 307 (1965), the Wisconsin Supreme Court held that a state law against age discrimination in employment was not preempted by the NLRA even with respect to employment under NLRB jurisdiction. The court relied principally on Continental, and held that the state and federal laws served different purposes, that age discrimination is a "merely peripheral concern" of the federal labor laws, and that enforcement of the state law would in no way frustrate federal labor policy.
New York and California courts have held that they have jurisdiction to enjoin racial segregation in unions which hold collective bargaining contracts under federal labor law, despite arguments that the NLRA preempts the field. Williams v. Int'l Brotherhood of Boilermakers, 27 Cal.2d 586, 165 P.2d 903 (1946); James v. Marinship Corp., 25 Cal.2d 721, 155 P.2d 329 (1944); Gaynor v. Rockefeller, 21 A.D.2d 92, 248 N.Y.S.2d 792, 803-04 (App.Div. 1964), aff'd, 15 N.Y.2d 120, 256 N.Y.S.2d 584, 204 N.E.2d 627 (1965).
In Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the Supreme Court held that the preemption principle did not bar tort suits by union members against unions for breach of duty of fair representation. This duty, imposed by federal labor law, requires the union to represent fairly all workers in its bargaining unit and not favor some at the expense of others.
In the case at bar, as in Vaca and the California and New York cases, the principal dispute is not between labor and management but between an individual worker and the union. Ms. Bald had no grievance against her employer until the union sought her dismissal for nonpayment of union dues.
The union and the employer in this case seek to distinguish these cases. Discrimination on the basis of failure to pay union dues, they argue, differs for these purposes from all other forms of discrimination. Accusations that a union or employer has discriminated on the basis of race or sex or age are merely peripheral concerns of the federal labor laws, they acknowledge. On the other hand, it is their position that sections 8(a)(3) & (b)(2) of the NLRA clearly give unions and employers the power to discriminate against workers who do not pay union dues. Far from being peripheral, union security is central to the entire scheme of federal labor-management law.
While this argument has some surface appeal, there are countervailing considerations which persuade us to reject it. It is necessary to inquire further into the nature of the state interest in regulation and the potential for interference with the federal regulation. Under a formalistic application of the Garmon principle, it is arguable that this suit would be preempted. However, as the United States Supreme Court noted in Farmer v. United Brotherhood of Carpenters and Joiners, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338, 349 (1977), there are other factors to be considered in departing from a strict application of the Garmon rule. We think there is little risk that carefully drawn relief would interfere with the effective administration of national labor policies. Finally, the law of employment discrimination illustrates an express and overriding state interest. The National Labor Relations Act is only one of the two bodies of law which is of relevance to this appeal. We now turn to a discussion of the civil rights laws which have been enacted to ban religious discrimination in employment.

II
Employment discrimination by either employers or unions on the basis of religion is forbidden by 42 U.S.C. § 2000e-2. This section is part of Title VII of the Civil Rights Act of 1964, and is administered by the federal Equal Employment Opportunity Commission.
The presence of § 2000e-2 on the federal statute books supports Ms. Bald's position. Of course, one federal statute cannot preempt *1334 another, so § 2000e-2 does not compel the conclusion that AS 18.80 is not preempted. But it indicates that there is a federal statute and a federal agency which, unlike the NLRA and the NLRB, have the explicit purpose of preventing religious discrimination in the labor-management context.[8] The Civil Rights Act prohibits discrimination by unions as well as by employers. Even within the federal government, the NLRB is not the only agency concerned with these matters.
Furthermore, § 2000e-5, also part of Title VII, requires exhaustion of state remedies, if any, before federal remedies  administrative or judicial  may be utilized.[9] In light of this, a decision that another federal statute preempts those state remedies would be difficult to justify, particularly since the congressional intent is quite clear that Title VII is to be read harmoniously with the NLRA.
The relationship of the NLRA and the Civil Rights Act was reviewed by the Supreme Court in Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). A worker fired from his job, allegedly because of his race, filed a grievance pursuant to the grievance procedure in his union contract, which had been negotiated under the NLRA. The grievance arbitrator decided against him. After exhausting administrative remedies in the Equal Employment Opportunity Commission, the worker brought a civil action in federal district court under Title VII of the Civil Rights Act, charging again that he had been terminated because of his race. The employer urged that arbitration and Title VII were exclusive remedies and that the worker, having taken his chance with one, could not then resort to the other. On this basis, the lower courts dismissed the suit.
The Supreme Court unanimously reversed. In so doing, it relied upon congressional intent that there be multiple forums in which to seek remedies for racial discrimination. Id. at 47-48, 94 S.Ct. at 1019, 39 L.Ed.2d at 158.[10] The Court explained that the worker had a right under his union contract to nondiscriminatory treatment, but he also had an entirely separate statutory right to be free from discrimination, one that could not be waived even if his union so wished, and one that he would have whether or not there was a union contract. Id. at 51-54, 94 S.Ct. at 1021-22, 39 L.Ed.2d at 159-62.
"We think, therefore, that the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance arbitration clause of a collective-bargaining agreement and his cause of action under Title VII."
Id. at 59-60, 94 S.Ct. at 1025, 39 L.Ed.2d at 164-65.[11]
*1335 Defendants cite § 8(a)(3) of the NLRA, which states that "nothing . . in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization [for a union shop]." In Cooper v. General Dynamics, 533 F.2d 163, 169-70 (5th Cir.1976) (2-1 decision), cert. denied, ___ U.S. ___, 97 S.Ct. 2972, 53 L.Ed.2d 1091 (1977), a Title VII case brought by Seventh-Day Adventist employees who would not pay union dues, the employer-defendant made this argument unsuccessfully. The court held that the employees' claim was cognizable under Title VII even though they worked under an agency shop arrangement negotiated pursuant to § 8(a)(3) of the NLRA. To read § 8(a)(3) to override the Civil Rights Act, the court pointed out, would effectively write it into the federal Constitution. A literal interpretation of § 8(a)(3) would make the 1964 Civil Rights Act inapplicable to every employment covered by the NLRA. It is clear that this was not the intent of Congress in enacting the Civil Rights Act (the later of the two statutes), nor has it been the interpretation of courts which have considered the question, including the United States Supreme Court.
The National Labor Relations Act and the state and federal civil rights acts were enacted 30 years apart, each in response to one of the most monumental social crises of the century. They were enacted for different purposes. The NLRA was enacted in 1935 to alleviate industrial strife and improve the lot of workers. 29 U.S.C. § 151. It was substantially amended in 1947 to prevent abuses by unions of the power that the 1935 act had given them. Id. §§ 141, 151. The civil rights laws were passed in an attempt to prevent the use of irrelevant and stigmatizing criteria to bar persons from employment for which they were well qualified. See AS 18.80.200.
We have concluded that there is nothing necessarily inconsistent in these aims, and that the laws Alaska has enacted to promote the latter purpose need not give way to the federal laws enacted for the former purpose. We hold that the National Labor Relations Act does not preempt AS 18.80 and does not deprive the courts of this state of jurisdiction to hear the instant case. We, of course, intimate no view on the proper resolution of the merits of this case.
The judgment of dismissal is reversed, and the case is remanded to the superior court for further proceedings on the merits.
NOTES
[1] In Wondzell v. Alaska Wood Products, Inc., Nos. 2792 & 2804, now pending before us, we will consider resolution of the merits of a dispute of this type.
[2] We take judicial notice from the record in Wondzell v. Alaska Wood Products, Inc., supra, n. 1 which is pending before us, that Seventh-Day Adventists believe that it is contrary to God's will for them to associate with labor organizations. They cite passages in the Bible which instruct workers to obey their employers, and hence believe that unions stir up labor-management strife which would not exist if workers followed these Biblical precepts rather than organizing. They believe that economic coercion, such as strikes and boycotts, is not a proper means to further even the most legitimate and desirable ends. Further, they are concerned that a labor union demands of them loyalty to earthly goals which is contrary to their first loyalty to God. Paying money to the union without joining it is not an acceptable compromise; giving financial support to a union, as well as having one's name on its membership rolls, is unacceptable to Adventists.
[3] AS 18.80.220(a) reads in relevant part as follows:

"Unlawful employment practices. (a) It is unlawful for
(1) an employer to refuse employment to a person, or to bar him from employment, or to discriminate against him in compensation or in a term, condition, or privilege of employment because of his race, religion, color or national origin, or because of his age, physical handicap, sex, marital status, changes in marital status, pregnancy or parenthood when the reasonable demands of the position do not require distinction on the basis of age, physical handicap, sex, marital status, changes in marital status, pregnancy or parenthood;
(2) a labor organization, because of a person's sex, marital status, changes in marital status, pregnancy, parenthood, age, race, religion, color or national origin, to exclude or to expel him from its membership, or to discriminate in any way against one of its members or an employer or an employee;
. . . ."
[4] The issues of substantive preemption and jurisdiction are intertwined. The United States Supreme Court declared in San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), that the NLRB has exclusive jurisdiction over activities which are "arguably" subject to sections 7 or 8 of the NLRA, thus excluding both state and federal court jurisdiction in such matters. However, there are exceptions to this exclusive jurisdiction. Sections 301 and 303 of the Labor Management Relations Act, 29 U.S.C. § 185 and § 187, respectively, provide for federal court jurisdiction over § 8(b)(4) unfair labor practice litigation and breaches of the collective bargaining agreement. See Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). In Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the Supreme Court held that there is federal court jurisdiction over litigation involving a breach of the duty of fair representation. Despite the NLRB's extensive jurisdiction, it does not normally entertain claims under either federal or state civil rights laws. Hence a decision that AS 18.80 is preempted by the federal law would also be a decision that the proper forum is the NLRB. A decision that Ms. Bald can maintain her state cause of action would also be a decision that she is entitled to proceed in state court. AS 22.10.020(c).
[5] Section 8(a)(3) makes it an unfair labor practice for an employer:

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: Provided, That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this subsection as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective-bargaining unit covered by such agreement when made, and (ii) unless following an election held as provided in section 159(e) of this title within one year preceding the effective date of such agreement, the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to rescind the authority of such labor organization to make such an agreement: Provided further, That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (A) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership."
[6] Section 8(b)(2) makes it an unfair labor practice for a union:

"(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership."
[7] The United States Supreme Court recently held that under this rule a tort action in state court by a worker against his union for intentional infliction of emotional distress was not preempted. Farmer v. United Brotherhood of Carpenters and Joiners, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977).
[8] We reviewed the similarities and differences between Title VII and AS 18.80 in Loomis Electronic Protection, Inc. v. Schaefer, 549 P.2d 1341 (Alaska 1976), and in Hotel Employees Union Local 879 v. Thomas, 551 P.2d 942 (Alaska 1976). The differences are largely in remedies, not of relevance to this case; in substance the two are similar. The state commission's regulations on religious discrimination incorporate the federal regulations under Title VII. 6 AAC 30.010(m)(2); 29 C.F.R. § 1605.1.
[9] In 42 U.S.C. § 2000e-7, Congress explicitly stated that the 1964 Civil Rights Act preempted state segregation laws, but not state equal rights and anti-discrimination laws.
[10] Accord, United Packinghouse, etc. Union v. N.L.R.B., 135 U.S.App.D.C. 111, 118-19, 416 F.2d 1126, 1133-34 n. 11, cert. denied, 396 U.S. 903, 90 S.Ct. 216, 24 L.Ed.2d 179 (1969), which considered the other side of the coin: whether the NLRB was ousted of jurisdiction over racial discrimination by Title VII. The court held that it was not.
[11] Emporium Capwell Co. v. Western Addition Community Organization, 420 U.S. 50, 72, 95 S.Ct. 977, 989, 43 L.Ed.2d 12, 29 (1975), cited by defendants, is not to the contrary. It reaffirms Alexander's holding that employees under a union contract may pursue the remedies provided by the civil rights laws. As Ms. Bald points out, that is exactly what she is trying to do.

Nor is Buckley v. American Fed'n of Television & Radio Artists, 496 F.2d 305, 312 (2d Cir.), cert. denied, 419 U.S. 1093, 95 S.Ct. 688, 42 L.Ed.2d 687 (1974), to the contrary. There the Second Circuit held that a challenge to a union security agreement by workers whose political beliefs were opposed to union membership, was within the exclusive jurisdiction of the NLRB. However, in Buckley there were no allegations of discrimination forbidden by the civil rights laws. Where, as here, such allegations are made, Alexander appears to dictate a contrary result.