Argued and submitted December 22, 1986, reversed and remanded on first and third
claims; otherwise affirmed May 6, 1987

MUNSEY,
*Appellant,*

*v.*

PLUMBERS' LOCAL #51 et al,
*Respondents.*

(A8507-04137; CA A38995)

736 P2d 615

Donald B. Potter, Portland, argued the cause for appellant. With him on the briefs was Richard C. Busse, Portland.

Stephen H. Buckley, Portland, argued the cause for respondents. With him on the brief was Carney, Buckley, Kasameyer & Hays, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Plaintiff is a member of Plumbers' Local #51, which operates a union "hiring hall." She brought this action against the union and two of its officers, alleging four claims: (1) defendants discriminated against her on the basis of sex in a variety of respects, in violation of ORS 659.030(1)(c);[1] (2) they interfered with her prospective economic advantage through their discriminatory job referral practices; (3) they failed to represent her fairly; and (4) they retaliated against her for complaining to federal and state agencies responsible for enforcement of anti-discrimination laws by refusing to refer her for work. The trial court granted defendants' motion to dismiss the third claim on the ground that it was barred by the Statute of Limitations and the remaining claims on the ground that the National Labor Relations Act (NLRA), 29 USC § 151 *et seq,* preempts the state law claims and makes the conduct alleged in them subject to the exclusive jurisdiction of the National Labor Relations Board (NLRB). Plaintiff appeals, assigning error to the court's ruling on each claim. We affirm in part and reverse in part.

We turn first to the trial court's ruling that plaintiff's fair representation claim was time-barred. Courts have concurrent jurisdiction with NLRB over claims for breaches of a union's duty of fair representation, but federal substantive law governs, regardless of the forum. 29 USC § 185; *Vaca v. Sipes,* 386 US 171, 87 S Ct 903, 17 L Ed 2d 842 (1967). The period of limitation for fair representation actions is six months. 29 USC § 160; *Del Costello v. Teamsters,* 462 US 151, 103 S Ct 2281, 76 L Ed 2d 476 (1983). Plaintiff brought this action in 1985. She alleged that defendant's breaches of their duty of fair representation occurred "[f]rom time to time since 1977" and that the failure to represent plaintiff fairly "is continuing."

■ Defendants argue that the complaint fails to allege a specific event which occurred within the six months before the action was brought and that the allegation of a "continuing" violation is "conclusory." We agree with plaintiff that, as a matter of federal substantive law, a violation of the duty of fair

---

[1] The statute is not specifically alleged, but the conduct that is alleged comes within the statute's prohibitions, and that is sufficient. ORCP 18A.

representation occurring more than six months before an action is brought is actionable if it is part of a continuing course of conduct and if the conduct was also manifested within six months of the time when the complaint was filed. *Lewis v. Local U. No. 100 of Laborers' Intern. U.,* 750 F2d 1368, 1378-79 (7th Cir 1984).

■ ■ There remains the question of whether plaintiff's complaint sufficiently alleges a course of violative conduct which continued to a time within six months of its filing. We conclude that it does. To survive a motion to dismiss on limitations grounds, a complaint does not have to show that the action *is* timely; it suffices if the complaint does not reveal on its face that the action is *not* timely. ORCP 21A(9). Here, plaintiff alleged that violations were taking place from time to time since 1977. That allegation does not show that no violative events occurred within the six months preceding the bringing of the action, and it is sufficient to withstand a motion to dismiss. *See Shaughnessy v. Spray,* 55 Or App 42, 50-51, 637 P2d 182 (1981), *rev den* 292 Or 589 (1982). The trial court erred by granting the motion to dismiss the fair representation claim.

The court's rulings on the other claims turn on the issue of federal preemption. Before we examine the specific claims, some overview of the doctrine of NLRA preemption of state law actions is necessary. Under *San Diego Unions v. Garmon,* 359 US 236, 79 S Ct 773, 3 L Ed 2d 775 (1959), and later Supreme Court decisions, the NLRA presumptively preempts state actions if they relate to conduct which is arguably protected or prohibited by the NLRA. However, that general rule is subject to vaguely worded and irregularly applied exceptions developed in *Garmon* and later cases. State actions are not preempted, under *Garmon,* if the activity alleged in them "was a merely peripheral concern of the [federal statutes] * * * [or] touched concerns so deeply rooted in local feeling and responsibility" that a congressional intent to preempt should not be inferred. 359 US at 243-44. The Court has also stated that preemption does not apply "where the particular rule of law sought to be invoked before another tribunal is so structured and administered that, in virtually all instances, it is safe to presume that judicial supervision will not disserve the interests promoted by the federal labor statutes." *Motor Coach Employees v. Lockridge,* 403 US 274, 297-98, 91 S Ct

1909, 29 L Ed 2d 473 (1971).

■ The alleged sexually discriminatory conduct challenged by plaintiff's first claim is arguably covered by a provision of the NLRA and is within the zone of presumptive preemption under *Garmon.* 29 USC § 158(b)(2) prohibits a union's effort "to cause or attempt to cause an employer to discriminate against an employee" with respect to hiring and other employment matters. The key question is, therefore, whether the alleged conduct comes within the exceptions to preemption.

The Oregon Supreme Court has held that certain Oregon anti-discrimination statutes and proceedings under them are excepted from preemption. In *Vaughn v. Pacific Northwest Bell Telephone,* 289 Or 73, 611 P2d 281 (1980), the plaintiff was discharged after she suffered a compensable on-the-job injury. After initiating a grievance under the collective bargaining agreement between her union and the defendant, she brought an action alleging discrimination in violation of ORS 659.410 and ORS 659.415. The court rejected the defendant's contention that the action was preempted by the federal labor statutes. It explained:

"The defendant characterizes this lawsuit as an employee's suit to enforce rights under the collective bargaining agreement, that is, the right not to be discharged except for just cause. In *Textile Workers v. Lincoln Mills,* 353 US 448, 456-457, 77 S Ct 912, 1 L Ed 2d 972 (1957), the Supreme Court held that federal law must be applied in actions to enforce rights under a collective bargaining agreement.

"We could answer the defendant's preemption argument by construing plaintiff's lawsuit as a suit to enforce independent statutory rights, not a suit to enforce rights under the collective bargaining agreement, therefore federal law does not preempt. Our examination of federal law, however, leads us to conclude that even if federal law is applied, the statutes in this case are not preempted." 289 Or at 80.

The court concluded:

"The statutes in this case, ORS 659.121, 659.410, and 659.415, are part of ORS Chapter 659, which, in toto, is concerned with enforcement of civil rights and with unlawful employment practices. These particular statutes protect employees receiving workers' compensation benefits from retaliatory discrimination by employers. These statutes apply

whether or not the employee is subject to a collective bargaining agreement.

"The prevention of employment discrimination against workers receiving a state administered compensation award is a matter of particular state responsibility and concern. Cf., *Brown v. Transcon Lines,* 284 Or 597, 607-609, 588 P2d 1087 (1978). The state has a substantial interest in protecting the integrity of its workers' compensation system. The claim asserted in court by this plaintiff is that the defendant has unlawfully retaliated against her for assertion of her rights under the Workers' Compensation Law. Judicial supervision and determination of such a claim does not disserve the interests promoted by federal labor relations law." 289 Or at 82.

There are no United States Supreme Court opinions which have decided whether proceedings under state statutes prohibiting sexual, racial, religious or similar discriminatory employment practices are preempted. Most of the pertinent state court decisions are in accord with the conclusion in *Vaughn* that the NLRA does not preempt proceedings under state statutes prohibiting employment discrimination on such bases. *See, e.g., Bald v. RCA Alascom,* 569 P2d 1328 (Alas 1977), and cases there cited; *Walker Mfg. Co. v. Industrial Comm.,* 27 Wis 2d 669, 135 NW 2d 307 (1965). In *Bald,* the Alaska court indicated that the NLRA is not centrally concerned with those forms of discrimination. 569 P2d at 1334;[2] *see also McDonald v. West Branch,* 466 US 284, 289, 104 S Ct 1799, 80 L Ed 2d 302 (1984); *Alexander v. Gardner-Denver Company,* 415 US 36, 94 S Ct 1011, 39 L Ed 2d 147 (1974) (holding that discharged black employe had right of action under Title VII of Civil Rights Act of 1964, 42 USC § 2000e *et seq,* to assert discrimination claim, notwithstanding arbitrator's finding pursuant to collective bargaining agreement that employe was discharged for cause).

Defendants argue that *Vaughn* is distinguishable, first, because the issue in *Vaughn* was not preemption but whether the grievance and arbitration provisions in a collective bargaining agreement were plaintiff's exclusive remedy

---

[2] Sex discrimination and comparable forms of discrimination are to be distinguished from the kinds of discrimination which have generally been considered in the preemption cases, *i.e.,* discrimination based on the employe's union status or union activities. *See Farmer v. Carpenters,* 430 US 290, 97 S Ct 1056, 51 L Ed 2d 338 (1977).

for discrimination arising out of the filing of a worker's compensation claim and, second, because an independent federal agency, such as the NLRB, was not available as an alternative forum for the plaintiff. We do not find defendant's attempts to distinguish *Vaughn* persuasive. The term "exclusive remedy" used in *Vaughn* is simply a different label for the preemption issue. The reason that the defendant there asserted that the federal remedy was exclusive was that, in its view, the federal statutes preempted the state's authority to provide an alternative remedy. That is the same point that defendants make here, except that the exclusive remedy which they say follows from the preemptive effect of the NLRA is an NLRB proceeding rather than a contractual proceeding. The fact that there was not an alternative forum, such as the NLRB, available in *Vaughn* is irrelevant. The *nature* of the purportedly required remedy is not the issue; the issue is whether the federal law requires that plaintiff pursue *any* particular remedy to the exclusion of others.

Whether or not *Vaughn* is directly controlling, its reasoning is applicable and persuasive. The Oregon statute under which plaintiff proceeds is part of the same statutory scheme as the one involved in *Vaughn.* The prevention of employment discrimination based on sex is as great a matter of state responsibility and concern as the prevention of discrimination based on an employe's having claimed workers' compensation. Judicial supervision of plaintiff's sex discrimination claim is no more or less likely to disserve the interests promoted by the federal labor laws than judicial resolution of the claim in *Vaughn.* We hold that proceedings pursuant to the Oregon statutes proscribing sexual discrimination in employment are not federally preempted and that the trial court erred by dismissing plaintiff's first claim.

The trial court's rulings on plaintiff's retaliation and interference with economic advantage claims present closer questions. Although the sex discrimination pleaded in the first claim is realleged in and underlies the injurious conduct that plaintiff alleges in her interference and retaliation claims, the gravamen of the latter claims is that defendants refused to dispatch plaintiff for work assignments.[3] State tort actions

---

[3] The retaliation claim is something of an enigma. The parties characterize it as a common law claim, and at least the punitive damages plaintiff seeks to recover under it

against unions by their members based on job referrals and interference with the members' relations with employers have consistently been held to be preempted by the federal labor laws. *See, e.g., Operating Engineers v. Jones,* 460 US 669, 103 S Ct 1453, 75 L Ed 2d 368 (1983); *Iron Workers v. Perko,* 373 US 701, 83 S Ct 1429, 10 L Ed 2d 646 (1963); *Plumbers' Union v. Borden,* 373 US 690, 83 S Ct 1423, 10 L Ed 2d 638 (1963); *Day v. Northwest Division 1055,* 238 Or 624, 389 P2d 42, *cert den* 379 US 878 (1964). In *Farmer v. Carpenters, supra* n 2, the plaintiff brought an outrageous conduct action against the union in state court, arising out of the union's alleged failures to refer him for hiring because of his vocal disagreements with union leaders about union affairs. Although the court held that the action itself was not preempted, it stated this broad caveat:

> "At the same time, we reiterate that concurrent state court jurisdiction cannot be permitted where there is a realistic threat of interference with the federal regulatory scheme. Union discrimination in employment opportunities cannot itself form the underlying 'outrageous' conduct on which the state court tort action is based; to hold otherwise would undermine the pre-emption principle. Nor can threats of such discrimination suffice to sustain state court jurisdiction. It may well be that the threat, or actuality, of employment discrimination will cause a union member considerable emotional distress and anxiety. But something more is required before concurrent state court jurisdiction can be permitted. Simply stated, it is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself." 430 US at 305. (Footnote omitted.)

In the cases cited in the preceding paragraph, with

---

go beyond the limits which ORS 659.121(2) establishes for actions under the state anti-discrimination statutes. On its face, however, the claim alleges conduct which is redressable under the statutory scheme. *See* ORS 659.030(1)(f); *Lewis and Clark College v. Bureau of Labor,* 43 Or App 245, 251, 602 P2d 1161 (1979), *rev den* 288 Or 667 (1980). Moreover, retaliation is one of the forms of conduct plaintiff alleges in her claim based on the anti-discrimination statutes. Nevertheless, given the parties' characterization, we will treat the fourth claim as alleging a tort rather than a statutory violation. We note also that the injuries alleged, the alleged direct cause of the injuries and the damages sought under the retaliation and interference claims are essentially identical.

the exception of *Farmer,* the courts either held that the states did not have a sufficient interest in the subject of the actions to overcome federal preemption or did not discuss that issue. The Court expressly concluded in *Operating Engineers v. Jones, supra,* where the plaintiff contended that the union had interfered with his contractual relationship with his employer and coerced the employer to discharge him, that the subject of the action was not "so deeply rooted in local law" as to override "the interference with federal labor law that prosecution of the state action would entail." 460 US at 683. It is problematical whether that can be said in this case: Oregon has no greater interest, vis-a-vis the NLRA, in either plaintiff's economic advantage or her job referrals by defendants than the state had in Jones's contractual relationship with his employer or the coercion which he alleged that the union had employed, but Oregon does have a deeply rooted interest in the enforcement of its laws against sex discrimination.

As we have noted, however, the gravamen of the interference and retaliation claims is defendants' referral practices rather than the alleged discriminatory motivation underlying those practices. Although it may seem artificial to distinguish between the discriminatory conduct prohibited by ORS chapter 659 and other conduct which is its immediate manifestation, the distinction seems to be dictated by the United States Supreme Court's decisions, and it is not unique to the issue at hand. The Oregon Supreme Court and we have indulged in similar distinctions in our decisions concerning the preclusive effect of ORS chapter 659 anti-discrimination provisions on common law tort actions. *See, e.g., Holien v. Sears, Roebuck and Co.,* 298 Or 76, 689 P2d 1292 (1984); *Kofoid v. Woodard Hotels, Inc.,* 78 Or App 283, 716 P2d 771 (1986); *Carsner v. Freightliner Corp.,* 69 Or App 666, 688 P2d 398, *rev den* 298 Or 334 (1984).[4]

■ We are compelled to conclude that plaintiff's interference with economic advantage claim is preempted by the NLRA and that the trial court was correct in dismissing it. The retaliation claim falls with the interference claim. Whether or not that claim would be preempted if the retaliation itself were alleged to be a cause of her injury, plaintiff

---

[4] Defendants do not argue that any of the claims are precluded by the state statutes.

does not so allege. She contends only that defendants' refusals to dispatch her for work were motivated by retaliatory as well as discriminatory reasons. As with the interference claim, the job referral allegation is the operative one in the retaliation claim, and the trial court was therefore correct in holding that claim to be preempted.[5]

Reversed and remanded on the first and third claims for relief; otherwise affirmed.

---

[5] We need not decide whether, in itself, retaliation would be subject to the NLRA.