Argued and submitted November 13, 2006, affirmed August 1, 2007

Lazar BODUNOV
and Sandra Bodunov,
*Respondents,*

*v.*

Kiril KUTSEV
and Fedosia Kutsev,
*Appellants.*

04C-16513; A129154

164 P3d 1212

Mark B. Comstock argued the cause for appellants. With him on the briefs was Garrett, Hemann, Robertson, Jennings, Comstock & Trethewy, P.C.

Paul R. J. Connolly argued the cause for respondents. With him on the brief was Connolly & Goldian, LLP.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

ORTEGA, J.

**ORTEGA, J.**

Plaintiffs bought a farm, mobile homes, and a migrant camp from defendants. They later obtained a judgment in the trial court, following a jury trial, for damages caused by defendants' fraudulent misrepresentations in connection with that purchase. Defendants appeal, asserting that the trial court erred in denying their motions to dismiss the complaint and for a directed verdict, both based on statute of limitations grounds. They contend that plaintiffs' action was untimely because plaintiffs waited to file it until more than two years after they should have discovered that defendants' representations were false. Defendants also argue that the trial court erred in denying their motion for a directed verdict, because plaintiffs waived their right to sue when they sold the property to a third party before trial. We disagree that the complaint and the evidence at trial, as a matter of law, compel the conclusion that plaintiffs' complaint was untimely, reject the waiver argument, and therefore affirm the judgment for plaintiffs.

Defendants first assign error to the trial court's denial of their ORCP 21 A(9) motion to dismiss the complaint.[1] We review to determine whether the face of the complaint demonstrates that the action was untimely. *Durham v. City of Portland*, 181 Or App 409, 414, 45 P3d 998 (2002); *Allen v. Lawrence*, 137 Or App 181, 186, 903 P2d 919 (1995), *rev den*, 322 Or 644 (1996).

The complaint alleges that, in April 2000, defendants sold plaintiffs a farm in Woodburn, together with four mobile homes and a migrant camp. At the time of the sale, defendants represented to plaintiffs that the mobile homes and camp were "legal" and could be used to secure income from the property. Plaintiffs were counting on income from rental of the mobile homes and camp to help them service the debt on the farm. However, in August 2003, plaintiffs learned from Marion County that the placement and occupancy of the mobile homes as rental dwellings and the occupancy of the

---

[1] That rule, in relevant part, authorizes a defendant to raise, by means of a motion to dismiss, the defense "that the pleading shows that the action has not been commenced within the time limited by statute."

camp were not permitted uses of the property and were in violation of the applicable zoning ordinance. A month later, they also learned that, in the 1980s, defendants had applied for and been denied permits for the mobile homes and camp. Plaintiffs filed their complaint in July 2004.

■■ Defendants contend that the face of the complaint demonstrates that plaintiffs began this action outside the time limits prescribed by ORS 12.110(1), which provides:

> "An action for * * * any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

A fraud is discovered when a plaintiff learns either of the misrepresentation itself or of facts sufficient to "excite attention and put [the plaintiff on] guard or call for an inquiry," if reasonable inquiry would then reveal the fraud. *Mathies v. Hoeck*, 284 Or 539, 542-43, 588 P2d 1 (1978) (citation and internal quotation marks omitted).

■■ To be dismissed as untimely, the complaint must reveal the untimeliness on its face. *Munsey v. Plumbers' Local #51*, 85 Or App 396, 399, 736 P2d 615 (1987). Thus, in order for defendants to prevail, the face of the complaint must reveal that plaintiffs brought their claim more than two years from the time that they learned of the misrepresentation or of facts sufficient to excite their attention and call for an inquiry. Here, the complaint demonstrates neither. It alleges that defendants represented at the time of the sale that the mobile homes and camp were "legal" and that plaintiff "learned from Marion County" in August 2003—less than a year before the complaint was filed—that defendants' representation was false. Nor does the complaint contain any allegations that would suggest that plaintiffs were aware of any facts sufficient to excite their attention to the need for an inquiry before that time.[2]

---

[2] Defendants contend that, because the complaint demonstrates that plaintiffs filed this action more than four years after the misrepresentations were made, it must "state that plaintiffs are relying on the discovery rule" of ORS 12.110(1). However, defendants offer no authority in support of that contention, which

■　　Defendants next contend that the discovery rule in ORS 12.110(1) did not extend the time for plaintiffs to file their complaint because the legal status of the mobile homes and camp was "apparent and inherently discoverable at the time of the property sale." Quoting *Gehrke v. CrafCo, Inc.*, 143 Or App 517, 523, 923 P2d 1333 (1996), *rev den*, 324 Or 560 (1997) (citation and internal quotation marks omitted), they argue that the "threshold question" for determining whether a plaintiff had sufficient knowledge to call for an inquiry is "whether the wrong and its probable consequences, by their nature, are *inherently discoverable* upon the occurrence." They further contend that a cause of action based on fraudulent misrepresentation is "inherently discoverable" if the plaintiff, exercising reasonable diligence in making further inquiry, would discover that the representation was fraudulent. Here, they contend, "reasonable diligence in making further inquiry" concerning defendants' representations would have involved contacting the Marion County planning offices, which would have disclosed that the mobile homes were illegal. Reasonable diligence, they assert, therefore "would have put plaintiffs on notice of the facts underlying the fraud."

The reference to facts that are "inherently discoverable" in *Gehrke* does not support the result for which defendants advocate. In that action for negligence, the issue was whether the discovery rule applied to toll the applicable limitations period during the time it took the plaintiff to determine the identity of the actual owner of the store where she slipped and fell. 143 Or App at 522-23. We did not address what was sufficient to trigger a duty to make an inquiry for purposes of the discovery rule; rather, we held that the discovery rule did not apply at all, because the elements of the plaintiff's negligence claim, including the identity of the tortfeasor (that is, the store owner) were "inherently discoverable" at the time that the plaintiff fell. The discovery rule did not toll the limitations period for the additional time necessary to determine the store owner's correct legal identity, because the plaintiff was already aware of all the elements of her cause of action. *Id*. at 523-24.

appears to contradict the terms of the statute and the test for when the duty to make an inquiry arises as set forth in *Mathies*, 284 Or at 542-43, and we reject it.

■ Unlike in *Gehrke*, the complaint here does not establish that the plaintiffs were aware of all the elements of their cause of action at the time that the tort at issue (that is, the fraudulent misrepresentation) was committed. Moreover, in the absence of actual knowledge of the misrepresentation, the elements of a fraudulent misrepresentation claim cannot be said to be "inherently discoverable" before the plaintiff knows of facts that would put her on notice of the need to make such an inquiry. *See Mathies*, 284 Or at 542-43. Defendants skip that notice step in arguing about what the inquiry would have disclosed. Even if we were to assume that defendants are right about the information that such an inquiry would have disclosed, that information does not make the fraudulent misrepresentation "inherently discoverable" in any way analogous to the circumstances we addressed in *Gehrke*. The face of the complaint does not demonstrate that plaintiffs knew of any facts before August 2003 (less than a year before they filed their claim) that would have put them on notice of the need to make an inquiry.

In their second assignment of error, defendants challenge the trial court's denial of their motion for a directed verdict. We address two of their arguments.[3] First, they contend that the evidence demonstrates that, as a matter of law, plaintiffs were on notice more than two years before filing their complaint that defendants had misrepresented the legal status of the mobile homes and migrant camp. Second, defendants contend that plaintiffs waived their right to sue for misrepresentation when they sold the farm to a third party after filing their complaint. We review for any evidence to support the verdict and will not set that verdict aside unless there is no evidence from which the jury could have found the facts necessary to establish the elements of plaintiffs' cause of action. *Woodbury v. CH2M Hill, Inc.*, 335 Or 154, 159, 61 P3d 918 (2003).

■ In support of their first argument, defendants contend that plaintiffs had sufficient notice at the time of closing that they should inquire further about the accuracy of defendants' representations—or, if not at closing, then plaintiffs

---

[3] We reject a third argument—that the trial court "impermissibly weighed evidence"—without discussion.

had such notice when they learned later that the county had never issued a septic permit for one of the mobile homes. We address first the information that plaintiffs had at the time of closing.

The earnest money agreement contained the following disclaimer language pursuant to ORS 93.040(2):

"THE PROPERTY DESCRIBED IN THIS INSTRUMENT * * * IS SUBJECT TO LAND USE LAWS AND REGULA-TIONS, WHICH, IN FARM OR FOREST ZONES, MAY NOT AUTHORIZE CONSTRUCTION OR SITING OF A RESIDENCE * * *. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY APPROVED USES * * *."

(Uppercase in original.) Similarly, the warranty deed contained the following statement, pursuant to ORS 93.040(1):

**"THIS INSTRUMENT WILL NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRU-MENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VER-IFY APPROVED USES * * *."**

(Boldface an uppercase in original.) Defendants contend that the disclaimers put plaintiffs "on notice to inquire into the approved uses." Additionally, the flyer advertising the sale of the property described the zoning as "EFU" (exclusive farm use), which, in defendants' view, further put plaintiffs on notice to check the property's approved uses.

This court addressed a similar situation in *McGann v. Boyd*, 124 Or App 409, 862 P2d 577 (1993), *rev den*, 319 Or 273 (1994). There, this court affirmed a grant of summary judgment to the defendants, a seller and a real estate agent, against the buyer's claims for misrepresentation. *Id*. at 411. The 15-acre parcel at issue included a house and a mobile home equipped with a septic system and electricity. *Id*. The

plaintiff alleged that, during negotiations, the seller represented that, at any time, the plaintiff could sell a five-acre portion of the parcel, which contained the mobile home, and could subdivide the remainder of the property into lots of no less than five acres. *Id*. However, the earnest money agreement contained the following language then required by ORS 93.040(1):[4]

"THIS INSTRUMENT DOES NOT GUARANTEE THAT ANY PARTICULAR USE MAY BE MADE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT. A BUYER SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY APPROVED USES."

(Uppercase in original.) 124 Or App at 411. The warranty deed conveying the property to the plaintiff contained the same language. *Id*. at 412. Additionally, more than two years before filing her complaint, the plaintiff obtained a zoning clearance notice that stated that the property was zoned EFU. *Id*.

Two members of the panel agreed with the trial court that the plaintiff's complaint was untimely because, after receiving the zoning clearance notice, she had had sufficient notice more than two years before filing her complaint to trigger an inquiry into the possibility of a misrepresentation. 124 Or App at 413; *id*. at 414 (De Muniz, J., concurring). However, only the author of the lead opinion was prepared to conclude that the statutory notice contained in the earnest money agreement and the deed put the plaintiff buyer on notice to inquire into approved uses of the property, triggering the running of the limitations period on her claims for misrepresentation. *Id*. at 413. The author of the concurring opinion would not have reached that question, but agreed with the lead opinion that the zoning clearance notice designating the property EFU put the plaintiff on inquiry notice of the defendants' misrepresentations. *Id*. at 414 (De Muniz, J., concurring). The dissenting opinion took the view that a question of fact existed as to whether either the statutory disclaimer language or the EFU designation put the plaintiff on

---

[4] That subsection has since been amended by Or Laws 1985, ch 719, § 1; Or Laws 1989, ch 366, § 1; Or Laws 1993, ch 792, § 40; and Or Laws 2005, ch 311, § 1.

sufficient notice to call for an inquiry as to whether the defendants had fraudulently misrepresented the uses to which the property could be put. *Id.* at 414-15 (Rossman, J., dissenting).

As we have recognized, then, the three opinions in *McGann* reached no agreement regarding the effect of notice under ORS 93.040 on a buyer's remedies against a seller for misrepresenting the uses to which property could be put. *See DK Investment Co. v. Inter-Pacific Development Co.*, 195 Or App 256, 260, 97 P3d 675 (2004) (holding that compliance with ORS 93.040 did not foreclose recovery from a seller under ORS 92.018, which allows a person who buys a lot or a parcel that was created without appropriate city or county authority to bring an individual action against the seller). Under the circumstances presented here, we conclude that a jury question existed as to whether either the statutory disclaimer language or the EFU designation noted on the flyer advertising the property should have triggered an inquiry into the accuracy of defendants' representations regarding the legality of the existing uses of the property.

We begin by addressing the statutory disclaimer language in the earnest money agreement and deed. Although the disclaimers may call into question whether plaintiffs' reliance on defendants' representations was reasonable—an issue not before us here—it does not suggest anything one way or the other about the accuracy of defendants' representations themselves. The disclaimers advised plaintiffs to verify with the county and city the appropriate uses of the property, but a fact question remains about whether the disclaimers gave plaintiffs sufficient notice to call for an inquiry as to whether defendants had fraudulently misrepresented that the existing uses were legal. *See generally Soursby v. Hawkins*, 307 Or 79, 84-88, 763 P2d 725 (1988) (holding, before the enactment of ORS 93.040, that whether a buyer reasonably relied on representations of the seller as to the zoning of the property without doing an independent investigation presented a question of fact). The trial court did not err in allowing the jury to decide that question on these facts.

■ We are particularly unwilling to take that question away from the factfinder when a seller makes representations about existing uses on the property. The operative language cautions the buyer that "[t]he property is subject to land use laws and regulations" and to "check with the appropriate city or county planning department to verify approved uses * * *." (Uppercase and boldface omitted.) Although that language is broad enough to cover both existing and future potential uses of property, it is not clear that a reasonable purchaser necessarily would understand it to suggest that he must check every existing use of the property to verify that it has been approved. Questions of whether an existing use is "legal" may vary in complexity, depending on the type of use at issue and the zoning and other ordinances involved. Like questions regarding the reasonableness of a buyer's reliance on the seller's representations, the issue of whether a buyer is on notice to inquire as the accuracy of a seller's representations must depend on the totality of the circumstances. *See generally OPERB v. Simat, Helliesen & Eichner*, 191 Or App 408, 427, 83 P3d 350 (2004), *rev withdrawn*, 340 Or 411 (2006) (discussing cases that "highlight that whether reliance is justifiable is to be evaluated in the totality of the circumstances").

We likewise reject defendant's contention that the reference to the EFU zoning designation in the advertising flyers put plaintiffs on notice as a matter of law to inquire further about the accuracy of defendants' representations. This case concerns the legality of uses already occurring on the property and, indeed, those uses arguably are farm-related and not such as would necessarily arouse a buyer's suspicion. *See* ORS 215.213(1)(g) (authorizing "accessory dwellings" in exclusive farm use zones if "customarily provided in conjunction with farm use"). A jury could decide under these circumstances that the reference in the flyers did not provide plaintiffs with sufficient notice that they should inquire further.

■ We proceed to address defendants' alternative argument that plaintiffs received sufficient notice of a need to inquire at the time they learned, more than two years before filing the complaint, of a problem with a septic tank for one of the mobile homes. A county inspector came out to the property after a sewage backup at one of the homes and later

informed plaintiffs that they needed a "septic system repair permit" to correct the problem and that the county had never issued a permit for the septic system. Defendants contend that, at that point, plaintiffs had facts sufficient, as a matter of law, to excite their attention as to a need to inquire about the truth of defendants' representations that the mobile homes and camp were legal uses of the property.

We disagree. Although a county official informed plaintiffs that no septic permit had been issued, the record does not establish that the official understood from that fact or intimated to plaintiffs that none of the mobile homes could be used legally under any circumstances. Although a jury could conclude that the incident put plaintiffs on notice that they should inquire as to the accuracy of defendants' more general representation that the mobile home and camp were legal uses, it also could draw the opposite inference.

■　Finally, we address defendants' argument that plaintiffs waived their fraudulent representation claim when they sold the property. Citing ORS 93.850(2), defendants contend that, in order to maintain their fraud action, plaintiffs "must have an interest in the real property." According to defendants, the voluntary sale of the real property that is the subject of their claim constitutes a voluntary relinquishment of a known right precluding them from further asserting their fraudulent misrepresentation claim.

■　We disagree. ORS 93.850(2) merely provides that a warranty deed "convey[s] the entire interest in the described property at the date of the deed which the deed purports to convey" and estops the grantor and her heirs, successors, and assigns from asserting that the grantor had a lesser interest in the property than the deed purported to convey. It does not establish that a tort action related to the acquisition or possession of the real property is an interest that is conveyed or relinquished by the deed, and defendants cite no other authority for that proposition. Accordingly, we reject defendants' argument that a tort action for fraudulent misrepresentation against the seller of real property is somehow waived when the buyer in turn conveys the property to a third party.

Affirmed.