Argued and submitted May 14, 2003, affirmed September 15, 2004

**DK INVESTMENT COMPANY, LLC,**
an Oregon limited liability company,
*Respondent,*

*v.*

**INTER-PACIFIC DEVELOPMENT COMPANY,**
an Oregon corporation;
and ICD, Inc.,
an Oregon corporation,
*Appellants.*

98C-19245; A113122

97 P3d 675

Michael T. Garone argued the cause for appellants. With him on the briefs were Mario J. Madden and Schwabe, Williamson & Wyatt, P.C.

Eric Yandell argued the cause for respondent. With him on the brief was Heltzel, Upjohn, Williams, Yandell, Roth, Smith & Petersen, P.C.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

■■    Defendants appeal from a jury verdict for plaintiff, arguing that the trial court erred in denying their motion for a directed verdict. "In reviewing a denial of a directed verdict, we will reverse only when there is a complete absence of evidence from which a jury could find the facts necessary to support the verdict." *Seidel v. Time Ins. Co.*, 157 Or App 556, 561, 970 P2d 255 (1998). In making that determination, we review the evidence in the light most favorable to plaintiff. *Ream v. Keen*, 314 Or 370, 373 n 2, 838 P2d 1073 (1992). We affirm.

In July 1996, plaintiff purchased undeveloped real property from defendants that was part of a larger parcel that defendants owned. At the time of the sale, defendants had not partitioned the property as required by ORS 92.016.[1] Because the property had not been partitioned, ORS 92.025 barred defendants from selling it to plaintiff.[2] When the property was partitioned in 1997, the City of Salem imposed as a condition of the partition a restriction that prohibited plaintiff from building on certain portions of the property. The prohibition effectively reduced by one third the area of the property that defendants had advertised as useable.

---

[1] ORS 92.016 provides:

"(1) No person shall sell any lot in any subdivision with respect to which approval is required by any ordinance or regulation adopted under ORS 92.044 and 92.048 until such approval is obtained. No person shall negotiate to sell any lot in a subdivision until a tentative plan has been approved.

"(2) A person may negotiate to sell any parcel in a partition with respect to which approval of a tentative plan is required by any ordinance or regulation adopted under ORS 92.044 or 92.046, respectively, prior to the approval of the tentative plan for the partition, but no person may sell any parcel in a partition for which approval of a tentative plan is required by any ordinance or regulation adopted under ORS 92.044 or 92.046, respectively, prior to such approval."

[2] ORS 92.025 provides, in part:

"(1) No person shall sell any lot in any subdivision or convey any interest in a parcel in any partition until the plat of the subdivision or partition has been acknowledged and recorded with the recording officer of the county in which the lot or parcel is situated.

"(2) No person shall sell any lot in any subdivision or convey any interest in a parcel in any partition by reference to or exhibition or other use of a plat of such subdivision or partition before the plat for such subdivision or partition has been so recorded. In negotiating to sell a lot in a subdivision or convey any interest in a parcel in any partition under ORS 92.016 (1) and (2), a person may use the approved tentative plan for such subdivision or partition."

Plaintiff also was prohibited from developing the property until a plat was recorded in January 1999. By that time, plaintiff's original building permit had expired and relevant building code changes required plaintiff to redesign its project substantially.

At trial, plaintiff sought damages under ORS 92.018 for (1) the reduction in value of the property because of the difference between the actual and advertised useable land; (2) the costs incurred in developing the original design for the project; and (3) the property taxes and the interest on the loan to purchase the property that plaintiff paid while waiting to obtain approval to develop the property. The jury awarded plaintiff $75,000 in damages.

Defendants contend that the court erred in denying their motion for a directed verdict. They make four arguments in support of that assignment. We address them in turn.

■ Defendants first argue that their compliance with ORS 93.040 operated to relieve them of any liability to plaintiff under ORS 92.018. ORS 92.018(1) provides that

"[a] person who buys a lot or parcel that was created without approval of the appropriate city or county authority may bring an individual action against the seller in an appropriate court to recover damages or to obtain equitable relief. The court may award reasonable attorney fees to the prevailing party in an action under this section."

ORS 93.040(1) provides, in turn, that

"[t]he following statement shall be included in the body of an instrument transferring or contracting to transfer fee title to real property * * *: 'THIS INSTRUMENT WILL NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY APPROVED USES AND TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES AS DEFINED IN ORS 30.930.' "

In defendants' view, the notice that they gave plaintiff under ORS 93.040 told plaintiff that it should contact the appropriate local planning department to determine the uses that could be made of the property. According to defendants, had plaintiff acted on that notice, it would have discovered that the property had not been lawfully partitioned and thereby would have avoided incurring the damages that it sought to recover from defendants. Defendants argue that *McGann v. Boyd*, 124 Or App 409, 862 P2d 577 (1993), *rev den*, 319 Or 274 (1994), supports its position. It does not. The lead, concurring, and dissenting opinions in *McGann* discussed the relationship between ORS 93.040 and ORS 92.018 but reached no agreement on the issue.

The text of ORS 93.040 indicates that the statute is intended to protect buyers by ensuring that they know that land use restrictions control the use of land in Oregon and by encouraging them to inquire about those restrictions before acquiring property. Nothing in the statute suggests that it was intended to limit the remedies that buyers have against sellers. In fact, subsection (5) of the statute *expands* the remedies that buyers have against sellers. It provides that

> "[n]o action may be maintained against any person for failure to include in the instrument, or for recording an instrument that does not contain the statement required in subsection (1) or (2) of this section, unless the person acquiring or agreeing to acquire fee title to the real property would not have executed or accepted the instrument but for the absence in the instrument of the statement required by subsection (1) or (2) of this section. No action may be maintained by the person acquiring or agreeing to acquire title to the real property against any person other than the person transferring or contracting to transfer fee title to the real property."

ORS 93.040(5). We therefore reject defendants' contention that their compliance with ORS 93.040 foreclosed recovery by plaintiff under ORS 92.018.

■ Defendants next argue that the contract assigns to plaintiff the risk of any injury caused by defendants' failure to partition the property lawfully. They rely on the following contractual provision:

"Seller makes no representations or warranties of any kind or nature whatsoever with respect to the condition of the Property, including but not limited to the environmental condition of the Property or the condition or status of the lakes on or adjacent to the Property, or, to the zoning classification or permitted uses of the Property. Neither has any agent or employee of Seller made any such representations or warranties. Buyer acknowledges that it has, or will, ascertain from its own independent sources the condition of the Property, including environmental condition thereof and the condition or status of lakes on or adjacent thereto, and, the zoning classification and permitted use of the Property. Seller and Buyer acknowledge and agree that Buyer shall acquire the Property, if at all, in a[n] 'as-is' condition without relying upon representations or warranties of any party, and in reliance solely on the results of its own inspection and investigation."

We reject defendants' argument for a number of reasons.

First, ORS 92.025 barred defendants from selling the property to plaintiff because the property had not been lawfully partitioned. Under the clause, plaintiff agreed not to rely on defendants' warranties and representations and to investigate the physical condition of the property and the zoning and permitted uses of it. Nothing in the clause suggests that plaintiff agreed that it would accept the consequences of purchasing property from defendants that defendants could not lawfully sell.

Second, although the clause recites that plaintiff acquired the property subject to the restrictions that existed in 1996, the restrictions that applied at that time did not include the restriction that the city imposed in 1997 when plaintiff applied to partition the property. The record, viewed in the light most favorable to plaintiff, establishes that a 1977 zoning change approved the development of multi-family housing on a large parcel of land that included the parcel that plaintiff later purchased. The zone change was subject to the following conditions:

"a.   Access to Rees Hill Road be limited to one location.

"b.   The number of dwelling units to be built on the property will be limited to 12 units per acre.

"c. The vegetation along Rees Hill Road will be retained as a physical buffer between the road and the multifamily units.

"d. The developer will field locate dwelling units so as to retain as many specimen of trees (oak, fir, pine) as possible."

Defendants purchased the property in 1988 and submitted a letter to the city suggesting the steps that they would take to satisfy conditions "c" and "d" in their development of the property. That proposal included a limitation on the area of the property on which defendants would build. The proposed limitation applied to the portion of the property that defendants later sold to plaintiff. The record contains no response to that document by the city. Before it purchased its portion of the property in 1996, plaintiff asked the city planner about defendants' 1988 letter and whether it would restrict plaintiff's development of the land. The city planner told plaintiff that the letter did not bind plaintiff. However, the city decided in 1997, as part of the *partition* process, that defendants' earlier proposed limit on the buildable area of the property would be imposed as a condition of the partition. Thus, the record indicates that, in 1996, when plaintiff purchased the property, the restriction that limited the amount of buildable land did not exist. It arose as a result of partitioning the property, which was necessary because defendants had sold the property to plaintiff without first partitioning it.

Third, the "permitted use" and "zoning classification" language in the contract do not indicate that plaintiff assumed the risk of a restriction on the amount of buildable land that arose as a consequence of defendants' failure to partition the land. "Permitted use" and "zoning classification" both refer to the type of use to which a property may be put. The property in this case was zoned for multi-family housing both before and after the partition process, and that zoning is not the source of plaintiff's injury. Thus, multi-family housing was a "permitted use" of the property. The injury that plaintiff claims is not that it cannot use the property as permitted or zoned but that, because defendants failed to partition the property before selling it, plaintiff did not and could not know that it would not be able to build on a significant portion of the property until after it had purchased it.

■ Fourth, although defendants are correct that a statutory right can be waived, "[t]o make out a case of waiver of a legal right there must be a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part." *McMillan v. Montgomery et al.*, 121 Or 28, 32-33, 253 P 879 (1927) (internal quotation marks omitted); *see also Sheldon v. Sheldon*, 163 Or App 256, 265, 987 P2d 1229 (1999) (quoting the rule from *McMillan* with approval). Assuming that the language in the contract can be read to refer, in some way, to the buildable area of the property, the contractual language does not satisfy the standard for a waiver of plaintiff's statutory right to recover damages for defendants' sale of property that had not been lawfully partitioned. Hence, the contractual language does not bar plaintiff's claim.

■ Defendants next argue that they were entitled to a directed verdict because plaintiff failed to present evidence to support a finding that defendants' failure to partition the property caused plaintiff damages that it could recover under ORS 92.018. Defendants make several points in support of that argument. They first contend that the damages that can be recovered under ORS 92.018 do not include consequential damages, which are the damages that they contend that plaintiff sought. For purposes of that argument, we assume without deciding that the damages awarded to plaintiff were consequential damages. The statute provides for an award of "damages" to a buyer of land resulting from its purchase of land that has not been lawfully partitioned. The statute does not contain any limit on the damages that a buyer can recover. In interpreting a statute, our task is not to "insert what has been omitted, or to omit what has been inserted." ORS 174.010. Defendants' construction of the statute would require us to do just that. We therefore reject their contention that consequential damages are not recoverable under ORS 92.018.

■ Defendants next contend that plaintiff failed to submit evidence from which the jury could find that their failure to partition the property caused plaintiff any damage. Plaintiff presented evidence that, because of defendants' failure to partition the property, it did not learn that the property had

one third less buildable land than defendants had represented it to have. An appraiser testified at trial that the difference between the expected and the actual buildable land reduced the property's value by $110,000. Plaintiff also presented evidence that it had incurred interest on a loan and paid property taxes and development costs during the partition process that it would not have incurred if defendants had properly partitioned the land before selling it. That evidence is sufficient to support an award of damages to plaintiff under ORS 92.018. Hence, the trial court did not err in denying defendants' motion for a directed verdict for failure to submit evidence of damages.

Affirmed.